JERRY BECCIA *v.* CITY OF WATERBURY ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued May 13—decision released August 25, 1981

*J. William Gagne, Jr.,* with whom, on the brief, was *David A. Swaine,* for the appellant (plaintiff).

*John C. Bullock,* for the appellee (defendant Edward St. John).

*Carl R. Cicchetti,* with whom, on the brief, were *Antony A. Casagrande* and *Thomas G. Parisot,* law student intern, for the appellees (named defendant et al.).

PETERS, J. This case arises out of an alleged conflict between the civil service system of the city of Waterbury and the provision of General Statutes § 29-45 requiring that a preference be given to members of a local fire department in the selection of a local fire marshal. The plaintiff, Jerry Beccia, an applicant for the position of fire marshal of Waterbury, brought an action against the defendants, the city of Waterbury and various city officials,[1] and against the defendant Edward St. John, the applicant certified as having ranked first in an examination for the position of fire marshal. Alleging that the certification of St. John violated § 29-45,[2] the plaintiff sought declaratory and injunctive relief ordering the rescission of the St. John certification and ordering that he be certified in St. John's stead. A few days earlier, St. John had brought an action,

---

[1] Those named as defendants were: the city of Waterbury; its mayor, Edward Bergin; the individual members of the board of fire commissioners; the city personnel director, J. A. McAllister; and the individual members of the civil service commission.

[2] General Statutes § 29-45 provides, in relevant part: "APPOINTMENT OF LOCAL FIRE MARSHALS AND DEPUTIES. The board of fire commissioners or, in the absence of such board, any corresponding authority of each town, city or borough, or, if no such board or corresponding authority exists, the legislative body of each city, the board of selectmen of each town or the warden and burgesses of each borough, or, in the case of an incorporated fire district, the executive authority of such district shall appoint a local fire marshal and such deputy fire marshals as may be necessary. *In making such appointment, preference shall be given to a member of the regular or volunteer fire department of such municipality. . . .*" (Emphasis added.)

*St. John* v. *Gaglione et al.*, for a writ of mandamus requiring the board of fire commissioners to appoint him to the position of fire marshal. These two separate actions were consolidated for trial.[3] After a hearing, the trial court rendered two judgments. One denied the injunctive relief sought by the plaintiff Beccia; the other granted the writ of mandamus sought by St. John. No appeal has been taken in the St. John case; the plaintiff Beccia appeals from the judgment denying him declaratory and injunctive relief.

The trial court's memorandum of decision reveals the following relevant facts: Upon the city's announcement, on October 25, 1979, that the position of fire marshal was vacant, three people filed applications to take the examination for that position. The three applicants were Jerry Beccia, Edward St. John and William McKeeman. Only Beccia and McKeeman were then members of the city fire department; St. John, although a city employee, was not a member of its fire department. Each of the applicants was certified to be an eligible candidate in accordance with General Statutes § 29-45a.[4] On the basis of an oral examination, and

---

[3] This did not, however, result in the consolidation of the two actions. Cf. Practice Book § 84; and see 1 Stephenson, Conn. Civ. Proc. (2d Ed. 1970) pp. 361–63. Beccia was not a party to St. John's action for a writ of mandamus.

[4] "[General Statutes] Sec. 29-45a. CERTIFICATION OF LOCAL FIRE MARSHALS, DEPUTIES AND INSPECTORS. EDUCATIONAL PROGRAMS. The state fire marshal shall adopt minimum standards of qualification for local fire marshals, deputy fire marshals and fire inspectors. The state fire marshal shall either (a) prepare and conduct oral, written or practical examinations to determine if a person is qualified and eligible to be a local fire marshal, deputy fire marshal or fire inspector or (b) accept successful completion of programs of training developed by public agencies and approved by him as proof of qualification for eligibility. Upon determination of the qualification of a

an evaluation of each applicant's experience, training and length of service, the city personnel director established an eligible list for the vacant position of fire marshal on which St. John ranked first, Beccia second and McKeeman third. In establishing this ranking, neither Beccia nor McKeeman was given any special preference by reason of his previous employment in the fire department. Thereafter, the personnel director certified St. John to the board of fire commissioners as the highest ranked applicant. The certification process complied with the city's civil service rules, which do not provide for a preference based upon membership in the fire department. The board, presumably because of the present controversy, refused to take any action on St. John's certification.

On these facts, the trial court concluded that the city's civil service regulations, authorized by special act of the legislature in 21 Spec. Acts 583, No. 499, § 57, controlled the appointment of a fire marshal, regardless of the provisions of § 29-45. The court determined that § 29-45 was inapplicable because that statute, in contradistinction to General Statutes § 7-415, the veterans preference statute, did not expressly provide that a preferred applicant be given special credit in any civil service or merit

local fire official under either subdivision (a) or (b), the state fire marshal shall issue or cause to be issued a certificate to such person stating that he is so certified. The state fire marshal shall establish classes of certification that will recognize the varying involvements of such local fire officials. The state fire marshal may conduct educational programs designed to assist such local fire officials in carrying out the duties and responsibilites of their office. Local fire marshals holding office in any municipality shall be certified in accordance with subdivision (a) or (b) within two years after October 1, 1971. No local fire marshal, deputy fire marshal or fire inspector shall be appointed or hired on or after October 1, 1979, unless such person is so certified."

examination. The court also decided that the language of § 29-45, if applicable, was directory, rather than mandatory. It therefore rendered judgment denying the plaintiff's claim for declaratory, injunctive or other equitable relief.

In the companion case brought by St. John, the court issued a writ of mandamus directing his appointment to the position of fire marshal. The court heard the St. John case together with the plaintiff's case. In its memorandum of decision, the court stated, "[a]ll of the evidence presented in the first [Beccia] case fully applied in this second [St. John] case; and this court's findings, conclusions and opinions stated above are adopted and applied in this second case." The plaintiff Beccia was not, however, a party to the St. John case and did not seek to intervene therein. No one has appealed the judgment of mandamus directing St. John's appointment as fire marshal.

## I

Before we reach the merits of the plaintiff's argument that the trial court erred in its legal conclusions about the meaning and applicability of § 29-45, we must consider St. John's argument that we should dismiss the plaintiff's appeal as moot. St. John argues that Beccia's appeal is moot because the judgment of mandamus is final and no appeal has been taken therefrom, so that no practical relief could be afforded to Beccia by the judgment of this court upon his appeal were we to find error in the judgment against Beccia.

We have repeatedly held that we will dismiss an appeal as moot when the facts and circumstances of the case have so changed that they make it impos-

sible for any actual or practical relief to follow from our judgment. See *Delevieleuse* v. *Manson*, 184 Conn. 434, 436, 439 A.2d 1055 (1981); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union*, 177 Conn. 17, 19, 411 A.2d 1 (1979); *Phaneuf* v. *Commissioner of Motor Vehicles*, 166 Conn. 449, 452, 352 A.2d 291 (1974); *Reynolds* v. *Vroom*, 130 Conn. 512, 515, 36 A.2d 22 (1944). A trial court judgment in another case, even if no longer subject to attack on direct appeal or on a motion to open judgment, does not, however, invariably constitute such a bar to our review of a trial court judgment; see, e.g., *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 591, 409 A.2d 1029 (1979); see also *State ex rel. Foote* v. *Bartholomew*, 103 Conn. 607, 623, 132 A. 30 (1925); and to relief to a successful appellant.

To the extent that St. John's argument that this appeal is moot rests upon the proposition that such a judgment denies us jurisdiction to afford relief to the appellant here, we reject it. A prior judgment which would be a bar to a later action, as res adjudicata, is a defense which must be specially pleaded by the party who seeks its benefit. Practice Book § 164; *Nikitiuk* v. *Pishtey*, 153 Conn. 545, 553, 219 A.2d 225 (1966); *Salem Park, Inc.* v. *Salem*, 149 Conn. 141, 144, 176 A.2d 571 (1961); *Gaer Bros., Inc.* v. *Mott*, 144 Conn. 303, 310, 130 A.2d 804 (1957); and see, e.g., *Driscoll* v. *Humble Oil & Refining Co.*, 60 F.R.D. 230, 233 (S.D.N.Y. 1973), aff'd without opinion, 493 F.2d 1397 (2d Cir. 1974); *Technograph Printed Circuits, Ltd.* v. *United States*, 372 F.2d 969, 973–75 (Ct. Cl. 1967) (estoppel). If it is not, the inconsistent judgment will not limit the power of the trial court to render a judgment which conflicts with the first, or of this court to review

such a judgment upon appeal. In *Carpenter* v. *Planning & Zoning Commission,* supra, 591, we held that after a final judgment granting mandamus had been rendered a second trial court did not err in considering anew a question of fact necessarily decided in the first action.

Further, it is generally held that a subsequent inconsistent judgment, if sought to be used in a third action, will prevail over an earlier one. See *Slattery* v. *Maykut,* 176 Conn. 147, 159 n.8, 405 A.2d 76 (1978); and see, e.g., *Dimock* v. *Revere Copper Co.,* 117 U.S. 559, 566, 6 S. Ct. 855, 29 L. Ed. 994 (1886); *Donald* v. *J.J. White Lumber Co.,* 68 F.2d 441, 442 (5th Cir. 1934); *Rosenstiel* v. *Rosenstiel,* 368 F. Sup. 51, 59 (1973), aff'd without opinion, 503 F.2d 1397 (2d Cir. 1974); *Helgesson* v. *Helgesson,* 196 F. Sup. 42, 46, aff'd, 295 F.2d 37 (1st Cir. 1961); see also *Treinies* v. *Sunshine Mining Co.,* 308 U.S. 66, 75–78, 60 S. Ct. 44, 84 L. Ed. 85 (1939); and see R. Ginsburg, "Judgments in Search of Full Faith and Credit: the Last-in-Time Rule for Conflicting Judgments," 82 Harv. L. Rev. 798, 798–99 (1969); Restatement (Second), Judgments § 41.2 (Tent. Draft No. 1, 1973). Thus we have the power to render a judgment which will afford Beccia relief.

Whether we should decline to exercise this power because of Beccia's arguable failure to comply with our rules of procedure is the question to which we now turn. The issue is whether Beccia is estopped to proceed in his case because he failed to move to intervene in the then pending St. John action for mandamus, and is therefore unable to appeal from the St. John judgment. A consideration of the nature of the two causes of action below will help to clarify this question.

An action for declaratory judgment pursuant to General Statutes § 52-29 is a statutory action " 'as broad as it well could be made.' *Sigal* v. *Wise,* 114 Conn. 297, 301, 158 A. 891 [1932]." *Horton* v. *Meskill,* 172 Conn. 615, 626, 376 A.2d 359 (1977); *Connecticut Savings Bank* v. *First National Bank,* 133 Conn. 403, 406–11, 51 A.2d 907 (1947); 2 Stephenson, Conn. Civ. Proc. (2d Ed. 1971) § 266d. It is the appropriate vehicle for construction of a statute if all parties affected thereby have been made or have been given the opportunity to become parties. Practice Book § 390 (d); *Rosnick* v. *Zoning Commission,* 172 Conn. 306, 307–308, 374 A.2d 245 (1977); *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 527, 290 A.2d 327 (1971); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 383, 260 A.2d 596 (1969). Having given the proper notice and brought all those interested into the declaratory judgment action, Beccia did at least in his own case pursue a proper course to test his rights under General Statutes § 29-45.

An action for a writ of mandamus, by contrast, is available only in limited circumstances and to achieve limited purposes. It lies to compel a public official to perform his duty. *Bahramian* v. *Papandrea,* 184 Conn. 1, 3, 440 A.2d 777 (1981); *Ballas* v. *Woodin,* 155 Conn. 283, 284, 231 A.2d 273 (1967); *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591 (1963). The duty it compels must be a ministerial one; the writ will not lie to compel the performance of a duty which is discretionary. *Bahramian* v. *Papandrea,* supra, 3–4; *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 717–19, 427 A.2d 866 (1980); *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 414, 294 A.2d 546 (1972); *Ballas* v.

*Woodin,* supra, 285; *Hannifan* v. *Sacks,* 150 Conn. 162, 167, 187 A.2d 253 (1962). It is available only to one who has a clear, legal right to the performance sought. *Bahramian* v. *Papandrea,* supra, 6; *Gerrity* v. *Bisciglia,* 178 Conn. 235, 238–39, 423 A.2d 871 (1979); *Ballas* v. *Woodin,* supra, 285; *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253 (1960); *Chatfield Co.* v. *Reeves,* 87 Conn. 63, 64, 86 A. 750 (1913).

Beccia's failure to move to intervene in the St. John mandamus action may well have arisen out of his good faith belief that the mandamus action was not a proper vehicle for testing the rights he claimed under § 29-45. At the trial court level, no one suggested that his declaratory judgment action was procedurally defective, as it would have been if there were another pending action in which the issues between the parties could be adjudicated. Practice Book § 390 (c); *Buchman* v. *Taylor,* 151 Conn. 209, 211, 196 A.2d 111 (1963); *Bartlett* v. *Rockville,* 150 Conn. 428, 432, 190 A.2d 690 (1963). Indeed, the trial court's memorandum of decision, reciting that there was "an actual bona fide and substantial question or issue in dispute and a substantial uncertainty of legal relations which require settlement between the parties" confirms that there was a dispute not ordinarily to be resolved through a writ of mandamus. Until the trial court had made its ruling in the declaratory judgment case, St. John arguably did not have a clear legal right to be appointed fire marshal. *Bahramian* v. *Papandrea,* supra; *Light* v. *Board of Education,* 170 Conn. 35, 38, 364 A.2d 229 (1975).

It is furthermore uncertain whether Beccia would have been permitted to intervene in the mandamus

action. Certainly Beccia was not a necessary party in that action. See *Jones* v. *Ricker,* 172 Conn. 572, 575–76, 375 A.2d 1034 (1977); *Herrup* v. *Hartford,* 140 Conn. 622, 630, 103 A.2d 199 (1954). Although a trial court generally has broad discretion to permit intervention, pursuant to the statutes; General Statutes §§ 52-102, 52-107, and 52-108; and our rules of practice; Practice Book §§ 83–85, and 99; such intervention is not routinely granted in mandamus cases. See, e.g., *Jones* v. *Ricker,* supra, 574; and cf. *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 623, 132 A. 30 (1925). That a motion to intervene might have been futile is confirmed, in part, by the trial court's denial of a motion to consolidate the declaratory judgment and the mandamus action under Practice Book § 84.[5] Such a consolidation would automatically have made Beccia a party to the mandamus action. Instead, the court chose to consolidate the cases for trial only.

In sum, while it would have been procedurally preferable for Beccia to have attempted to intervene in the mandamus action, we cannot say that his failure to do so should deprive him of his right to review of this declaratory judgment action. He filed his declaratory judgment action promptly, before the rendition of judgment in the mandamus case, and all interested persons were made parties thereto. It was reasonable for him to assume that decision of the declaratory judgment action was required before the mandamus action could be resolved, and the trial court's memorandum of decision reveals that the court did approach the two cases in that sequence. The trial court can be said to have validated the procedure that Beccia fol-

---

[5] The defendant fire commissioners of Waterbury made this motion.

lowed when it found that "the parties should not be left to seek redress by some other procedure than [a] declaratory judgment." On this record, Beccia cannot be charged with seeking to obtain two opportunities to obtain a favorable judgment upon the same issue, and there is therefore no reason of policy to hold him estopped.[6]  Cf. James & Hazard, Civil Procedure (2d Ed. 1977) pp. 597–99.

Having determined that Beccia is not procedurally foreclosed from pursuing his appeal, we must still decide whether any actual or practical relief is available if we find that the trial court erred in the judgment rendered in the declaratory judgment action.   Such relief may be afforded through an action of quo warranto pursuant to General Statutes § 52-491.[7]   Despite St. John's appointment as fire marshal, Beccia may use a complaint in the nature of quo warranto to seek St. John's ouster from office and to have the position of fire marshal declared vacant. *State ex rel. Gaski* v. *Basile,* 174 Conn. 36, 38–39, 381 A.2d 547 (1977); *Scully* v. *Westport,* 145 Conn. 648, 652, 145 A.2d 742 (1958); *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 616, 136 A.2d 792 (1958); *Alcorn ex rel. Hoerle* v. *Thomas,* 127 Conn. 426, 428, 17 A.2d 514 (1941);

---

[6] The leading commentators are in agreement on two points:   that the offensive use of collateral estoppel against a non-party is not often justifiable and that estoppel is more properly applied to issues of fact than of law.   See James & Hazard, Civil Procedure (2d Ed. 1977) pp. 576–83; 1B Moore, Federal Practice (4th Ed. 1980) ¶¶ 0.412 [3], 0.441 [2], [3], 0.411, 0.442 [1].

[7] "[General Statutes] Sec. 52-491.  COMPLAINT IN THE NATURE OF QUO WARRANTO.  When any person or corporation usurps the exercise of any office, franchise or jurisdiction, the superior court may proceed, on a complaint in the nature of a quo warranto, to punish such person or corporation for such usurpation, according to the course of the common law and may proceed therein and render judgment according to the course of the common law."

*State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554,
557, 78 A. 442 (1910); see 2 Stephenson, Conn.
Civ. Proc. (2d Ed. 1971 and Sup. 1970–76) § 260.
Although a successful action in quo warranto would
oust St. John, it would not, in itself, entitle Beccia
to an appointment in his stead. *Meigs* v. *Theis,* 102
Conn. 579, 593, 129 A. 551 (1925). Once the quo
warranto action declares the office of fire marshal
to be vacant, however, Beccia could proceed in man-
damus to seek his own appointment to the position,
if he could establish his own clear legal right
thereto.

Far from being moot as St. John maintains, this
appeal presents for review claims of error whose
resolution may cause the reversal of the judgments
against Beccia and in favor of St. John. The pos-
sible need to resort to quo warranto and to man-
damus in order to implement a judgment does not
make the appeal moot.

## II

We turn, therefore, to the plaintiff Beccia's claim
that the trial court erred in holding that General
Statutes § 29-45[8] did not require that he be given a

---

[8] "[General Statutes] Sec. 29-45. APPOINTMENT OF LOCAL FIRE MAR-
SHALS AND DEPUTIES. The board of fire commissioners or, in the
absence of such board, any corresponding authority of each town,
city or borough, or, if no such board or corresponding authority
exists, the legislative body of each city, the board of selectmen of
each town or the warden and burgesses of each borough, or, in the
case of an incorporated fire district, the executive authority of such
district shall appoint a local fire marshal and such deputy fire mar-
shals as may be necessary. In making such appointment, preference
shall be given to a member of the regular or volunteer fire department
of such municipality. Each local fire marshal shall be sworn to the
faithful performance of his duties by the clerk of the town, city,
borough or fire district and shall continue to serve in that office until
removed for cause. Such clerk shall record his acceptance of the

preference, as a member of the Waterbury fire department, in the selection of a fire marshal. The city of Waterbury admits that no preference whatsoever was given to Beccia or to McKeeman, the third ranked candidate for fire marshal, upon the basis of their previous membership in the city's fire department. Thus if General Statutes § 29-45 requires that some preference be given to a member of the city's fire department in selecting a fire marshal, the ranking of the three candidates is invalid and a new eligible list of candidates will be required.

The appointment of a fire marshal for Waterbury, all parties concede, is properly governed by our general statutes, the city charter, and the city's civil service rules and regulations. The issue in this case involves interpreting and reconciling them. The principle which governs such conflicts is that later enactments are presumed to repeal earlier inconsistent ones to the extent of the conflict. *New Haven Water Co.* v. *North Branford,* 174 Conn. 556, 564-65, 392 A.2d 456 (1978); *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 206, 355 A.2d 21 (1974); *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 425, 209 A.2d 674 (1965); *Moran* v. *Bens,* 144 Conn. 27, 30, 127 A.2d 42 (1956). A later enactment will have this effect without regard to the characterization of either act as general or specific in its effect and whether general or special acts are involved. Id. " 'The General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon

position of local fire marshal and shall report the same in writing to the state fire marshal within ten days thereafter, giving the name and address of the local fire marshal and stating the limits of the territory in which the local fire marshal is to serve."

any one of them. And it is always presumed to have intended that effect which its action or non-action produces.' *State* v. *Staub,* 61 Conn. 553, 566, 23 A. 924 [1892]." *New Haven Water Co.* v. *North Branford,* supra, 565. This principle operates here to give General Statutes § 29-45 primacy over the Waterbury city charter and over the city's civil service rules and regulations promulgated pursuant thereto.

The position of fire marshal of Waterbury was created in 1895 and exists pursuant to 12 Spec. Acts 434, No. 329, § 106 (Div. 2, § 3352, Waterbury City Charter), and the authority of its board of fire commissioners to make appointments when the position falls vacant stems from a 1931 special act. 21 Spec. Acts 563, No. 499 (Div. 2, §§ 3351, 3353, Waterbury City Charter). That act also permits amendments to the charter for specified purposes. 21 Spec. Acts 563, No. 499, §§ 56, 57. Pursuant thereto the city in 1962 adopted civil service regulations governing the method of appointment to city positions.

General Statutes § 29-45 was enacted in its present form effective June 30, 1955. See Public Acts 1955, No. 367. The legislature's intent that a preference be given to the members of a local fire department in the selection of a fire marshal is express. Further, the legislative history confirms an intent to use the device of a preference to implement the recommendation contained in the report of the MacDonald Commission.[9]

---

[9] The MacDonald Commission was created in 1953 by Governor John Lodge to investigate the relationship between the state and its subdivisions. The legislative history is at Conn. General Assembly, 6 H. R. Proc., Pt. 3, 1955 Sess., pp. 1463–64; Conn. Joint Standing Committee Hearings, Cities & Boroughs, Pt. 1, 1955 Sess., p. 123.

Neither the civil service provisions of the Waterbury charter nor the detailed civil service rules and regulations promulgated thereunder make any provision for giving a preference to a member of the Waterbury fire department when evaluating applicants for the position of Waterbury fire marshal. Indeed, Waterbury's civil service provisions prohibit any preference not based upon ability or experience, save only that given pursuant to General Statutes § 7-415 to war veterans, which is incorporated as ch. V, § 6 (b) of the Waterbury civil service rules and regulations. Waterbury's civil service provisions contemplate no distinction between experience in the Waterbury fire department and equivalent experience in any other fire department. See Waterbury Civil Service Rules & Regs., ch. V, §§ 6-8.

Thus we disagree with the trial court as to the applicability of General Statutes § 29-45 to Waterbury. This later enactment of general applicability establishing a preference was intended to apply throughout the state; its language is plain.

Whether, however, § 29-45 is mandatory is a different question. We must decide whether in establishing a preference it requires either the civil service commission or the board of fire commissioners, when making an appointment, to modify, in any particular fashion, the ranked list of eligible candidates supplied to it by the civil service commission.

We have repeatedly held that in distinguishing mandatory from merely directory statutory provisions the test most satisfactory and conclusive is whether the prescribed mode of action is of the essence of the thing to be accomplished. *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 130, 394

A.2d 731 (1978); *State ex rel. Arcudi* v. *Iassogna,* 165 Conn. 203, 205, 332 A.2d 90 (1973); *Akin* v. *Norwalk,* 163 Conn. 68, 72, 301 A.2d 258 (1972).

The essence of General Statutes § 29-45 and the subsequently enacted § 29-45a is the legislative concern to secure the public safety by setting state-wide standards for the appointment of local fire marshals. Some parts of these sections expressly impose requirements that are clearly mandatory. Thus, § 29-45 mandates that local fire marshals be appointed and § 29-45a mandates that candidates for such appointments meet certain specific qualifications. We must decide whether the legislature's instructions are equally mandatory in providing, in the second sentence of § 29-45, "[i]n making such appointment, preference shall be given to a member of the regular or volunteer fire department of such municipality." We conclude that this language is sufficiently unequivocal to be mandatory, but insufficiently specific to be self-executing.

The legislature, in enacting the § 29-45 preference, did two things. On the one hand, it expressed the policy of the state that the harmonious and effective administration of local fire departments required that appropriate recognition be afforded to prior service in local fire departments. On the other hand, it left open the manner in which such a preference was to be implemented, inferentially leaving the question of implementation to the sound exercise of local discretion.

It is clear that a statute so written is not self-executing. It cannot be read to command that specific points on a civil service test be given to applicants with prior experience as members of local fire departments, because such a form of pref-

erence would violate the express mandate of the veterans' preference act, General Statutes § 7-415, enacted during the same legislative session in which § 29-45 was reenacted. Furthermore, it contains no instructions whatsoever about the sanctions that are to attach to failure to afford the statutory preference. See *Marsala* v. *Valve Corporation of America,* 157 Conn. 362, 368-69, 254 A.2d 469 (1969).

Instead, for the statute to have any effect, it must contemplate that each municipality will determine for itself how to reconcile the state's insistence that there be some form of preference with the locality's normal appointment processes. Such a delegation of authority is consistent with legislative recognition of substantial diversity in the operational patterns of the various cities and towns in the state. A statute may be mandatory yet leave to local implementation the manner in which the statutory duty is to be discharged. See, e.g., *Chamber of Commerce* v. *Murphy,* 179 Conn. 712, 719-20, 427 A.2d 866 (1980); *Burke* v. *Board of Representatives,* 148 Conn. 33, 38, 166 A.2d 849 (1961); *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958); *State ex rel. Redgate* v. *Walcott,* 125 Conn. 160, 165, 3 A.2d 852 (1939); see 1 Sutherland, Statutory Construction (4th Ed. 1972) § 4.07.

The record establishes, however, that the city of Waterbury has not complied, in any fashion, with the duty imposed upon the city by § 29-45.[10] Since

---

[10] Without violating the mandate of § 7-415, the city might provide a preference to someone with prior local fire department experience by, for example, requiring certification of more than one candidate for appointment, among whom a person like Beccia would then be entitled to the position if he alone had the requisite experience, or by requiring the appointment of someone like Beccia if the civil service ranking resulted in a tie. We do not intend these examples to be anything other than illustrative.

the trial court's denial of declaratory relief was based upon its erroneous conclusion that § 29-45 was not binding upon the city, the judgment rendered against the plaintiff cannot stand and the case must be remanded for further proceedings.

There is error, the judgment is set aside, and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.