CIVIL SERVICE COMMISSION ET AL. *v.* EDWARD PEKRUL ET AL.

CIVIL SERVICE COMMISSION ET AL. *v.* BOARD OF POLICE COMMISSIONERS

| SUPERIOR COURT | JUDICIAL DISTRICT OF WATERBURY | FILE NOS. 087414 087653 |
|---|---|---|

Memorandum filed October 18, 1989

*John M. Gesmonde,* for the plaintiffs in the first case.

*Dennis M. Buckley,* for the defendants in the first case.

*John M. Gesmonde,* for the named plaintiff in the second case.

*George Tzepos,* for the plaintiff Edmund Jayaraj in the second case.

*Dennis M. Buckley,* for the defendant in the second case.

BARNETT, J. Before the court are motions to dismiss[1] the above-captioned cases, which are actions in quo warranto and mandamus respectively. In both cases, the plaintiffs are the civil service commission of the city of Waterbury, Edmund Jayaraj, as administrator of the commission and director of personnel of the city of Waterbury, and Jayaraj, individually, as a Waterbury resident and taxpayer.

The defendants in the quo warranto action (No. 087414) are Edward Pekrul, Joseph Pesce, Edward Stephens, James Clary and Phillip Rinaldi, five police officers, who, the plaintiffs claim, have been illegally appointed to the positions of detective/plainclothesman and whose ousters from those positions are sought.

In the mandamus action (No. 087653), the sole defendant is the board of police commissioners of the city of Waterbury, the authority that appointed the five

---

[1] The pleading filed by the five defendants in the quo warranto action is entitled "Plea in Abatement." In the mandamus action, the defendant board of police of commissioners filed a motion to dismiss. The plea in abatement has been properly treated by the plaintiffs as a motion to dismiss. Quite a few years ago, the motion to dismiss supplanted the former plea in abatement as the procedural vehicle to test the court's jurisdiction.

quo warranto defendants to their respective posts.[2] The mandamus action seeks to compel the board to appoint Pesce and four other policemen to the position of detective/plainclothesman on the basis of higher ratings on the civil service eligibility list.[3] Under Connecticut law, both actions are necessary for the accomplishment of the plaintiffs' purposes: quo warranto to remove the incumbents and mandamus to secure the appointment of the plaintiffs' nominees. *Beccia* v. *Waterbury,* 185 Conn. 445, 456–57, 441 A.2d 131 (1981); *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554, 559, 78 A. 442 (1910); *Duane* v. *McDonald,* 41 Conn. 517, 521–22 (1874).

For the purpose of ruling on the motions, the court must accept as true all material factual allegations and construe them most favorably to the plaintiffs. *Warth* v. *Seldin,* 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *American Laundry Machinery, Inc.* v. *State,* 190 Conn. 212, 217, 459 A.2d 1031 (1983). The following items are therefore deemed admitted: The status of the plaintiffs; the submission of a personnel requisition by the superintendent of police to fill five vacant positions of detective/plainclothesman; the subsequent authorization of the personnel requisition by Waterbury's mayor and budget director; the forwarding of the requisition to the plaintiff Edmund Jayaraj as director of personnel; the certification by Jayaraj, as director of personnel, of the five highest-rated can-

---

[2] Waterbury City Code, Div. 2, Charter and Related Laws, article 5, § 3333 provides in part that "[s]aid board of police commissioners shall have the sole power of appointment and removal of officers and members of said police department."

[3] In the quo warranto complaint, the rankings of the five defendants on the eligibility list are stated to be as follows: Edward Pekrul–24, Joseph Pesce–2, Edward Stephens–40, James Clary–9 and Phillip Rinaldi–17. According to the mandamus complaint, the five highest-rated candidates on the eligibility list were Thomas Storace, Joseph Pesce, Francis Woodruff, Daniel Coleman and William Cortez.

didates on the eligibility list; and, the action of the board of police commissioners in filling the vacant positions from the eligibility list but, with the exception of Pesce, in not selecting the five highest-rated candidates as certified by Jayaraj.

Identical claims for dismissal have been made in both cases. The defendants contend that there is (1) a lack of subject matter jurisdiction, (2) a lack of in personam jurisdiction, (3) an insufficiency of process, and (4) an insufficiency of service of process.

The defendants' claims concerning lack of in personam jurisdiction, insufficiency of process and insufficiency in the service of process can be treated summarily. Although matters of this nature are proper subjects of a motion to dismiss, each of them is considered to have been waived unless asserted within thirty days after the filing of an appearance. Practice Book §§ 142, 143 and 144.

Appearances for the five defendants in the quo warranto action and for the defendant board of police commissioners in the mandamus action were filed on October 31, 1988. The motions to dismiss, however, were not filed until June 16, 1989. A denial, on the basis of the above Practice Book sections, of the defendants' contentions other than the claim of lack of subject matter jurisdiction is proper. As a matter of record, requested extensions of time had expired before the motions to dismiss were filed.[4]

[4] The occurrence of the waiver makes unnecessary a ruling on the patent tension between Practice Book § 541 (differentiating between mandamus to enforce rights and mandamus to enforce a public duty and requiring participation by the state's attorney in the latter situations) and the later enacted amendment to General Statutes § 52-485 (c) ("[a]ny common law requirement that the state's attorney participate in any way in an action for mandamus is abolished").

The claim of an absence of subject matter jurisdiction cannot be waived and must be considered. Practice Book § 145. As presented, the defendants' claim seemingly had two aspects, justiciability and standing, each of which merits a separate discussion.

In asserting a lack of justiciability, the defendants claim that the quo warranto and mandamus actions do not present live controversies that are capable of resolution through the judicial process. See *Flast* v. *Cohen,* 392 U.S. 83, 94–95, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). The premise here is that the city of Waterbury is constituted as "one body politic and corporate" and that the civil service commission, Jayaraj as director of personnel, and the board of police commissioners, are all agents of the city who, for that reason, are incapable of suing each other. In sum, a lack of justiciability is advocated on the ground that in the present cases, the city, in effect, is litigating against itself.

With respect to the issue of justiciability, the defendants' "suing oneself" theory cannot be regarded seriously. In *Ducharme* v. *Putnam,* 161 Conn. 135, 138–39, 285 A.2d 318 (1971), the Supreme Court noted with no apparent disapproval that in *United States* v. *Interstate Commerce Commission,* 339 U.S. 426, 69 S. Ct. 1410, 93 L. Ed. 1451 (1949), the federal government was permitted to sue itself. "[C]ourts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented." Id., 430. The question to be asked is whether the action is one that is traditionally submitted to litigation, and in the two present cases, where the writs of quo warranto and mandamus are being utilized in their historic functions, that question must be answered affirmatively. Moreover, the "suing oneself" theory does not reach the plaintiff Jayaraj as a taxpayer, or the five individual quo warranto defendants.

Standing, the other prong of the defendants' attack, is, when questioned, a component of subject matter jurisdiction. *Claydon* v. *Finizie,* 7 Conn. App. 522, 526, 508 A.2d 845 (1986). In the determination of standing the primary focus is on whether the party bringing the complaint, is the proper party to request an adjudication of the issue and, not whether the issue itself is justiciable. *Flast* v. *Cohen,* supra, 99–100. Standing embodies the well recognized rule "that a person is not 'entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity.' " *Nye* v. *Marcus,* 198 Conn. 138, 141–42, 502 A.2d 869 (1985).

Standing can be elusive in application. *Flast* v. *Cohen,* supra, 98–99. As a concept, however, standing has been most often described by the courts in the following terms: " 'Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously presented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of [a] direct injury he has suffered or is likely to suffer, in an individual or representative capacity.' " (Citations omitted.) *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 648–49, 556 A.2d 1020 (1989); *Maloney* v. *Pac,* 183 Conn. 313, 320–21, 439 A.2d 349 (1981); see *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 389, 512 A.2d 152 (1986).

Although the two present cases are intertwined as to the desired results, each of them has its own prereq-

uisites. Further, the plaintiffs are acting in different capacities. To determine whether standing exists, the complaints and the status of each plaintiff in relation to them must be examined separately.

A quo warranto action is the procedure to challenge a person's de jure title to public office. *Cheshire* v. *McKenney,* 182 Conn. 253, 256, 438 A.2d 88 (1980). Quo warranto is not available to test the appointment of a mere government employee. *Carleton* v. *Civil Service Commission,* 10 Conn. App. 209, 212, 522 A.2d 825 (1987). Connecticut decisions have uniformly characterized police officers, without regard to rank, as public officers. *Bartlett* v. *Rockville,* 150 Conn. 428, 430, 190 A.2d 690 (1963); *McKeithen* v. *Stamford,* 149 Conn. 619, 622, 183 A.2d 280 (1962); *McDermott* v. *New Haven,* 107 Conn. 451, 453, 140 A. 826 (1928); *McDonald* v. *New Haven,* 94 Conn. 403, 411, 109 A. 176 (1920).

By established case law, Jayaraj, as a Waterbury taxpayer, has standing to bring the quo warranto action. *State ex rel. City of Waterbury* v. *Martin,* 46 Conn. 479, 482 (1878); *Carleton* v. *Civil Service Commission,* supra, 216. The rationale for standing is that a taxpayer[5] is interested in having the duties annexed to a public office performed by a person who has been legally elected or appointed thereto. *State ex rel. City of Waterbury* v. *Martin,* supra. Jayaraj's standing as a taxpayer means that the quo warranto action will go forward irrespective of rulings on the standing of the civil service commission or on Jayaraj as the administrator of the commission and director of personnel.

Unlike quo warranto, however, taxpayer status does not automatically confer standing on Jayaraj as a man-

[5] Jayaraj's status as a resident also appears to be sufficient at least if he is an elector. See *State ex rel. Oakey* v. *Fowler,* 66 Conn. 294, 295, 32 A. 162 (1895).

damus applicant. The reason for the differences lies in the functions served by the two writs. In quo warranto, the burden is on the officeholder and he must rely wholly on the strength of his own title. *Cheshire* v. *McKenney,* supra, 257; *State ex rel. Southey* v. *Lashar,* 71 Conn. 540, 545, 42 A. 636 (1899). Mandamus, on the other hand, is an action to compel performance by a public official of a mandatory and ministerial duty. Among its requirements is a showing by the applicant that he has a clear legal right to have the duty performed. *Bahramian* v. *Papandrea,* 184 Conn. 1, 3, 440 A.2d 777 (1981). Even where the alleged duty is a public one, relief by way of mandamus is available only to one who has a complete and immediate right that the public act be done. *Ballas* v. *Woodin,* 155 Conn. 283, 284–85, 231 A.2d 273 (1967).

A plaintiff who relies on taxpayer status in bringing suit to contest an action by municipal officials must also demonstrate that the action will cause him to suffer some pecuniary loss or other irreparable injury. *American-Republican, Inc.* v. *Waterbury,* 183 Conn. 523, 526, 441 A.2d 23 (1981). Stated another way, the taxpayer must allege and subsequently prove that he has a specific legal interest, as distinguished from a general public interest in the subject matter of the controversy. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 549, 427 A.2d 822 (1980). The test for standing when a taxpayer brings an action for mandamus is whether he possesses an interest distinct from the interest which he shares with the general community. *Aiken* v. *Radnor Township Board of Supervisors,* 83 Pa. Commw. 190, 476 A.2d 1383, 1386 (1984).

There is nothing in the mandamus complaint that amounts to allegations that Jayaraj, as a taxpayer, was injured, monetarily or otherwise, by the alleged illegal appointments of the board of police commissioners or that he, aside from the general public, is entitled to

have specific other persons appointed as detectives/ plainclothesmen. Consequently, as a taxpayer, Jayaraj lacks standing in the mandamus action.

Civil service in Waterbury is the product of an amendment to the city's charter adopted on November 6, 1962.[6] *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 421, 209 A.2d 674 (1965). As amended, the charter provides for a civil service commission and for the employment by the commission of a director of personnel who is described as the commission's administrator. On the question of standing, the interests of the civil service commission and Jayaraj as director of personnel are, therefore, coextensive.

One of the claims of the civil service commission and its director of personnel is that they have standing in a "representative" capacity. If, by the use of this term, these plaintiffs are asserting that they qualify as representative parties in the manner described in *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 304, 524 A.2d 636 (1987), and *Connecticut Assn. of Health Care Facilities* v. *Worrell,* 199 Conn. 609, 616, 508 A.2d 743 (1986), then the court disagrees.

The idea of representative standing has changed in recent years. In *Connecticut Assn. of Health Care Facilities* v. *Worrell,* supra, 614–16, the Supreme Court abandoned its previous holding that a professional association had to be personally injured or have a personal stake in the controversy; see *Connecticut Society of Architects, Inc.* v. *Bank Building & Equipment Corporation,* 151 Conn. 68, 75, 193 A.2d 493 (1963); and adopted the criteria for representative standing set forth by the United States Supreme Court in *Hunt* v. *Washington State Apple Advertising Commission,* 432 U.S. 333, 337, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). "[A]n association has standing to bring suit on

---

[6] Waterbury City Code, Div. 2, Charter and Related Laws, c. 2 §§ 201, 203.

behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the law suit." Id., 343.

All Waterbury police officers are city employees in the competitive division of the classified service, which is administered by the civil service commission. *State ex rel. Sloane* v. *Reidy,* supra, 426.[7] Yet even if the commission could qualify as an association,[8] the *Hunt* criteria cannot be satisfied by the situation at hand. Certain police officers are required defendants in the quo warranto action, which is a necessary forerunner to the mandamus action. Further, the *Hunt* criteria rest upon the premise that the representative plaintiff is acting for the general benefit of its membership. " '[W]hether an association has standing [to sue] on behalf of its members depends in substantial measure on the nature of the relief sought.' " *Automobile Workers* v. *Brock,* 477 U.S. 274, 287, 106 S. Ct. 2523, 91 L. Ed. 2d 228 (1986); see *Hunt* v. *Washington State Apple Advertising Commission,* supra, 343; *Connecticut Assn. of Health Care Facilities* v. *Worrell,* supra, 616. In the present situation, the premise underlying the *Hunt* criteria is clearly rebutted. The relief envisioned by the civil service commission through the quo warranto and mandamus actions would be beneficial to some police officers and would be detrimental to others.

---

[7] Waterbury City Code, Div. 2, Charter and Related Laws, c. 2 § 204 (inclusive except for categories specifically exempted) and § 205.

[8] The representative plaintiff in *Hunt* was a state agency. Standing was found because the agency performed functions similar to those of a private trade or professional association. *Hunt* v. *Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

Whether the civil service commission has demonstrated individualized standing remains to be resolved. The defendants' argument is that the commission does not possess standing at all because there is no provision in the Waterbury charter authorizing the commission to sue or to be sued.[9] On this point, several pronouncements must be taken into account. A municipality's charter constitutes its organic law and serves as an enabling act both creating power and prescribing the form in which power must be exercised. *West Hartford Taypayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 742, 462 A.2d 379 (1983). A civil service commission is a body of special and limited jurisdiction and has no powers except those given to it by the laws creating it. *Jones* v. *Civil Service Commission,* 175 Conn. 504, 508–509, 400 A.2d 721 (1978). A municipal commission's authority is measured and limited by the express language in which authority is given, or, by implication, necessary to enable the commission to perform some duty cast upon it in express terms. *Perretta* v. *New Britain,* 185 Conn. 88, 92–93, 440 A.2d 823 (1981); *Carruthers* v. *Vumbacco,* 4 Conn. App. 168, 171, 493 A.2d 259 (1985). For reasons stated below, the court's opinion is that a proper interpretation of the foregoing pronouncements means that the absence of express authority in the charter for the plaintiff commission to sue or to be sued is not determinative of the question of standing in the present actions.

One express grant of authority in the Waterbury charter is that the civil service commission is to adopt rules and regulations that shall, inter alia, provide:

[9] The defendants have brought to the court's attention a provision in the Bridgeport charter authorizing that city's civil rights commission to "begin and conduct all civil actions which may be necessary for the proper enforcement of this act and of the rules of the commission and shall defend all civil suits which may be brought against the commission."

Open competitive examinations; the establishment of lists of persons eligible for appointment and promotion; and the certification of the person standing highest on the appropriate eligibility list to fill a vacancy. Rules and regulations adopted pursuant to the authority granted by the charter carry a presumption of validity and have the force and effect of law. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 497, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986).

The rules and regulations as adopted state a preferential policy for competitive examinations and contain provisions authorizing the director of personnel to establish promotional and employment lists and, upon receipt of a personnel requisition, to certify the top name from an eligibility list.[10] For intradepartmental transfers, the apparent focus of the dispute underlying the quo warranto and mandamus actions, the regulations provide as follows: "The appropriate department head may, at any time transfer an employee in the competitive division under the jurisdiction from one position to another in the same class in the same department. An intra-departmental transfer of an employee to a position of another class shall be made only with the approval of the Director of Personnel. The Director of Personnel shall be notified of such change in assignment."[11] The commonly accepted purpose and function of civil service regulations such as those existing in Waterbury is discussed in *Shanley* v. *Jankura,* 144 Conn. 694, 704, 137 A.2d 536 (1957).

In *Board of Pardons* v. *Freedom of Information Commission,* supra, 650, the Supreme Court held that the

[10] The City of Waterbury Civil Service Rules and Regulations, cc. VI and VII, pp. 19–25. Upon request, the court received a certified copy of the rules and regulations at the hearing.

[11] The City of Waterbury Civil Service Rules and Regulations, c. VIII § 4, p. 26.

board of pardons had asserted a colorable claim of direct injury in asserting that an order interfered with its deliberative functions. Standing was found on the basis of the board's institutional interest in its decision-making process. Similarly, this court concludes that the allegations by the civil service commission and its director of personnel that the appointments were made in violation of civil service rules and regulations and that compliance with the rules and regulations would have resulted in different appointments, are assertions, in both actions, of direct injury to the institutional interests of the commission as delegated to it by the city's charter. A civil service board has been held to possess standing, as a party directly interested, in a petition for mandamus directing municipal officials to remove alleged illegally appointed employees from office and to appoint others in their stead. *State ex rel. Norris* v. *Chancey,* 129 Fla. 194, 212, 176 So. 78 (1937).[12]

The defendants have suggested some additional grounds for dismissal that raise issues that are prudential rather than strictly jurisdictional. See *Flast* v. *Cohen,* supra, 97. One such suggestion concerns the existence and status of two related actions, *Coleman* v. *Pekrul,* Superior Court, judicial district of Waterbury, Docket No. 084151 (March 7, 1988), and *Local 1237, American Federation of State, County & Municipal Employees, Council 15* v. *Waterbury (AFSCME),* Superior Court, judicial district of Waterbury, Docket No. 084116 (March 8, 1988). The *Coleman* suit is a quo warranto action brought by one of the nonappointed police officers against the five officers who were named as detectives/plainclothesmen. The city of Waterbury has

---

[12] The permitted use of mandamus in *State ex rel. Norris* v. *Chancey,* 129 Fla. 194, 212, 176 So. 78 (1937), provides precedent for the standing of the civil service commission and Jayaraj as director of personnel in both the quo warranto and mandamus actions. The use of mandamus by some jurisdictions as a procedure for removal from office is noted in *Dwayne* v. *McDonald,* 41 Conn. 517, 521 (1874).

intervened in the suit as a defendant. The *AFSCME* suit is an action brought by the police union against the city, the mayor, the superintendent of police, the board of police commissioners, and the five appointed officers. In the *AFSCME* suit, the relief sought is in the nature of quo warranto coupled with a declaratory judgment.

On July 5, 1988, the court, *J. Healey, J.,* granted a motion by the city to stay proceedings in both cases pending arbitration under the collective bargaining contract between the union and the city. Apparently a question was raised regarding whether the issues in the suits were subject to arbitration since the court noted that the question of arbitrability was itself subject to arbitration. *Hartford* v. *Local 308,* 171 Conn. 420, 427, 370 A.2d 996 (1976). On February 7, 1989, the court, *Murray, J.,* declined to reconsider Judge Healey's ruling.

The fact that the pervading issues of the legality of the appointments of the five officers and the nonappointments of five others may be subject to arbitration does not, at this juncture, affect the court's jurisdiction in the present actions although they too might be subject to a stay of proceedings. General Statutes § 52-410. More than fifteen months have elapsed since Judge Healey's decision. See General Statutes § 52-416 (time limits for the rendition of arbitration awards). If a decision has been reached on the preliminary question of the arbitrability of the issues, this court has yet to be informed of it.

The second suggestion is that, as a matter of law, the civil service commission has overstepped its authority because the charter does not provide for the position of detective/plainclothesman.[13] Aside from the fact

---

[13] Waterbury City Code, Div. 2, Charter and Related Laws, article 5, § 3332 (a): "The police department of the City of Waterbury shall consist

that this claim ignores the allegations that personnel requisitions for such positions came to the commission from the superintendent of police, it presents a matter of defense, and is not a ground for dismissal.[14] The essential question seems to be whether the appointment of the five officers as detectives/plainclothesmen was a duty assignment under the control of either the board of police commissioners or the superintendent of police,[15] or, whether it was a promotion, which required compliance with the rules and regulations of the civil service commission. In this respect, the present actions appear to be reminiscent of *New Haven Police Local 530* v. *Logue,* 188 Conn. 290, 449 A.2d 990 (1982).

The court concludes that the plaintiffs with standing have appeared in both actions and that justiciable issues have been presented, and denies the motions to dismiss the quo warranto and mandamus actions.

---

of a superintendent and such other officers, policemen and policewomen as the board of police commissioners shall deem necessary and which the board of alderman shall approve. Such department organization shall be established by ordinance adopted by the board of alderman."

[14] As does the effect, if any, of the arbitration decision in 1986, located in the *Coleman* v. *Pekrul,* Superior Court, judicial district of Waterbury, Docket No. 084151 (March 7, 1988), and *Local 1237, American Federation of State, County & Municipal Employees, Council 15* v. *Waterbury,* Superior Court, judicial district of Waterbury, Docket No. 084116 (March 8, 1988) files, which appears to have involved similar issues.

[15] Waterbury City Code, Div. 2, Charter and Related Laws, article 5, § 3334: "The superintendent of police shall have the sole right to assign the officers, including the members of the detective department and patrolmen, to their respective duties."