[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff law firm has filed this action to recover legal fees from the defendant for services rendered between August 1988 and January 1992. The complaint alleges a contract for these services and in the alternative, a quantum meruit count for recovery of the fair value of the legal services. The defendant denies or pleads insufficient knowledge as to all of the plaintiff's allegations, except as to the allegation that the City of Waterbury is a duly authorized municipal corporation. The defendant also pleads five special defenses alleging that the plaintiff is not entitled to recover.
The case was tried to the court over two days, June 30 and July 1, 1993. The court ordered trial briefs to be filed by July 23, 1993. The plaintiff has filed a comprehensive brief; the defendant has filed no brief.
The circumstances of the retention of the plaintiff by the defendant and the authority for that retention were contested matters in this case. The court finds the facts as follows:
The defendant City of Waterbury has a Civil Service Commission, the purpose of which is to replace political patronage, nepotism, and favoritism in the process of employment in city jobs with considerations of merit and fitness for the position. Since 1962 the Commission has administered the system through its employment of a director and other staff who develop job descriptions, administer tests, and maintain certified lists of persons eligible for job vacancies that become available.
The heart of the system is the administration of objective examinations to job candidates, the maintenance of lists that generally rank candidates according to test scores, and the obligation of the appointing authority to put into the job those ranked highest, according to the Commission's procedures. CT Page 6931
In February 1988, a personnel requisition was issued for five then-vacant detective positions in the Police Department. The Superintendent of Police, the Budget Director, and Mayor Joseph Santopietro all signed the requisition. When the Director of the Civil Service Commission Edmund Jayaraj received the requisition, he certified a list of five candidates who had scored highest on a recently administered examination. Rather than appoint these five individuals, however, the Superintendent of Police in consultation with Mayor Santopietro, then-Corporation Counsel Francis Donnarumma, and the Board of Police Commissioners, named only one of the certified candidates and filled the other four positions with four other candidates who were not among the top five scorers. The appointment of these four individuals was illegal. It violated the City Charter and the Civil Service Regulations. See, Civil Service Commission v. Pekrul, 42 Conn. Sup. 107 (1991), aff'd, 221 Conn. 121 (1992).
Civil Service Director Jayaraj immediately registered a written objection with city officials and notified the Superintendent of Police and the Corporation Counsel that the appointments directly contravened the law and threatened the integrity of the entire civil service system. The independent Commissioners of Civil Service were aware of the situation and fully supported Mr. Jayaraj in his actions.
Meanwhile the four certified candidates filed suit against the City and settlement discussions commenced.[1] In that lawsuit, Corporation Counsel Donnarumma represented the City, and he arranged for outside counsel Dennis Buckley to represent the five non-certified candidates. At this time it became clear to Mr. Jayaraj that the corporation counsel's office was not merely expressing an opinion, as it had previously done, that the appointments were legal, but was taking an active role in court to defend the new hires. Determining that this presented a conflict of interest for the corporation counsel's office, the Civil Service Commission and its director first broached the issue of hiring outside counsel to advise and represent the Commission.
At a meeting on March 15, 1988, at which the mayor, Attorney Buckley, Corporation Counsel Donnarumma, Chair of the Civil Service Commission Michael Stolfi, and Mr. Jayaraj were present, the Corporation Counsel declined to provide outside counsel for the Commission. The next day Mr. Jayaraj contacted the plaintiff through its principle John Gesmonde to determine if he would be available to represent the Commission. The plaintiff, upon CT Page 6932 hearing the circumstances of the controversy, expressed interest and quoted a fee to Mr. Jayaraj of $85 per hour.
When the controversy had still not been resolved by mid-summer, the Commission once more requested to the Corporation Counsel that outside independent counsel be provided to it, this time the request made formally, in writing. Formally, in writing, the Corporation Counsel said no.
On August 10, the Commission voted to retain Attorney Gesmonde to represent its interests in vindicating the City Charter and Civil Service Regulations in view of the direct illegal actions of the city administration in appointing non-certified candidates to city jobs. A letter evidencing the resolution was sent to Attorney Gesmonde the next day and he immediately began work. To further formalize its position, the commission resolved to notify the financial authorities of the City of the outlay of funds for outside counsel, and the Commission did so by letter to the Board of Finance on August 22, 1988.
On behalf of the Commission, Attorney Gesmonde instituted two lawsuits in 1988, one for a writ of quo warranto to prevent the appointment of the persons on the illegal list and one for a writ of mandamus to compel the appointment of those on the certified list.
These matters were contested by the City at virtually every stage. See, e.g., Civil Service Commission v. Pekrul, 41 Conn. Sup. 302
(1990) (Defendant's Motion to Dismiss, denied, Barnett, J.). After the Commission succeeded at trial, see Id., 42 Conn. Sup. 107
(1991) (Pellegrino, J.), the defendants appealed and the case was eventually decided in the Commission's favor by the Connecticut Supreme Court. Id., 221 Conn. 121 (1992) (per curiam). The plaintiff law firm competently represented the Commission throughout every stage of this difficult and aggressively defended litigation.
After the Supreme Court upheld the position of the Commission, the City of Waterbury complied with the court's directive and using the certified list removed unlawfully-appointed detectives and appointed candidates from the certified list.
The plaintiff worked throughout this period without CT Page 6933 compensation, but with the expectation that he would be paid according to the terms of the Commission's retention letter. After he submitted his bill to the City of Waterbury, the City notified him in April 1992 that it would not pay him. This lawsuit followed.
The City of Waterbury denies it is liable for fees because it claims the Commission had no power to contract, on its own, with the plaintiff for legal services, citing various sections of the Waterbury City Code regarding procedure for city contracts and appropriations. The plaintiff, however, relies on Div. 2 210 of the Waterbury City Charter:
 The financial authorities of the City of Waterbury shall provide necessary funds to carry out the purpose of this [Civil Service] Charter Amendment. . . .
The plaintiff argues that regardless of the normal contract and appropriation procedures of the city, in a situation such as this in which the very integrity of the independent Civil Service system is thwarted by the city, the Charter takes precedence and confers upon the Commission the authority in essence, to defend itself. The court agrees.
Internecine disputes between municipal agencies are not new in Connecticut law. In Pepe v. City of New Britain, 203 Conn. 281
(1987), the Mayor and the Common Council were involved in a dispute over the power of the mayor to award certain contracts and expend certain federal funds without the approval of the Council. The corporation counsel, the trial court found, was presented with a conflict of interest and thus the Common Council had implied authority to retain independent counsel.[2] The trial court found that there was antagonism between the two branches of city government on a very important issue involving the city's welfare.
 The Corporation Council [sic] could not represent both sides, or in fact either side, and it made no attempt to represent the Common Council in either of the lawsuits involved. . . . Incident to its general powers the court finds that the Common Council has authority to employ counsel if necessary to assist in the performance of its duties, especially where, as here, the Corporation Counsel has a CT Page 6934 conflict of interest and cannot represent it.
Pepe v. New Britain, 12 Conn. Law Trib., No. 6, pp 26, 27 (1986), aff'd 203 Conn. 281 (1987).
The court finds that a contract for legal services existed between the plaintiff and the defendant duly authorized by the Civil Service Commission under both express and implied authority in the circumstances then existing. Mr. Gesmonde's firm competently performed the legal services contracted for, and more, did so over three years without advance compensation because, in part, in the best tradition of the legal profession, it felt the public interest was at stake.
The court finds for the plaintiff and awards $41,164.99 plus costs.