[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION]
The plaintiff, John Geletka, brings this action in quo warranto as a taxpayer against the defendant, Robert Hughes. The plaintiff claims that the defendant unlawfully holds the position of deputy chief of police of Naugatuck. the parties have stipulated to the following facts:
Pursuant to General Statutes § 7-192, the legislature passed Special Laws 1953, Act No. 321 (Special Act 321) creating the Borough of Naugatuck Board of Police Commissioners (Police Commission). On July 31, 1990, and on September 18, 1990, the Police Commission voted to suspend Rule 26, Paragraphs 1 through 8[1] of the rules and regulations issued by the Police Commission regarding the promotion of the deputy chief of police. On October 26, 1990, Robert Hughes was appointed as deputy chief and has held that position until the present. The defendant has never taken a written examination with regard to his promotion to the position of deputy chief.
General Statutes § 52-491[2] provides for a quo warranto action "to test the defendant's right to hold office de jure." [Cheshire v. McKenney], 182 Conn. 253, 256, 438 A.2d 88
(1980). A taxpayer has standing to bring an action in quo warranto. [Civil Service Commission v. Pekrul], 41 Conn. Sup. 302,308, 571 A.2d 715, 719 (1989, Barnett, J.), aff'd 221 Conn. 12,601 A.2d 538 (1992), citing [State ex rel. City of Waterbury v.Martin], 46 Conn. 479, 482 (1878). "In a quo warranto proceeding, the title to be challenged must be a public office." [New HavenFirebird Society v. Board of Fire Commissioners], 219 Conn. 432,436, 593 A.2d 1383 (1991). A deputy chief of police holds a public office that may be challenged by quo warranto action. See [State exrel. Barnard v. Ambrogio], 162 Conn. 491, 492-93, 294 A.2d 529
(1972); see also [Civil Service Commission v. Pekrul], supra, 308.
The burden of proof in a quo warranto action is on the CT Page 4770 defendant to prove that he properly and lawfully holds the position. [Cheshire v. McKenney], supra, 257; [Deguzisv. Jandreau], 27 Conn. App. 421, 424, 606 A.2d 52 (1992). If the defendant fails to meet his burden of proof, the court will order that the defendant be ousted from office and the position be declared vacant. [Beccia v. Waterbury], 185 Conn. 445,456, 441 A.2d 131 (1981). Once the position is vacant, a mandamus action may be brought to request an order that a valid appointment be made. Id., 457. In a quo warranto action, the court will order costs to the prevailing party. General Statutes § 52-492.[3]
The plaintiff argues that the defendant unlawfully holds the position of deputy chief as he failed to take a written examination as required by Special Act 321, Section 3.
The defendant makes three arguments. First, the defendant claims that the court is without power to issue an order in this matter as the Police Commission is not a party to the action. Second, the defendant argues that the legislature gave the Police Commission the implied authority to modify regulations created by the Police Commission pertaining to the police department. Third, the defendant argues that the position of deputy chief is an alter ego of the chief of police, who is not required to take a written examination and, therefore, the Deputy Chief is not required to take a written examination.
"A successful quo warranto action unseats an illegal office holder and declares the position vacant. It does not place the rightful claimant into the office. If the claimant can thereafter establish his clear right to the position, he may bring an action in mandamus to seek his own appointment." [NewHaven Firebird Society v. Board of Fire Commissioners], supra, 436. Since the relief granted in a quo warranto actions is ouster, the only necessary defendant is the individual who is allegedly unlawfully holding office. See [Civil ServiceCommission v. Pekrul], 221 Conn. 12, 13 n. 1; [Beccia v.Waterbury], supra, 456-57.
The Connecticut legislature enacted Special Act 321 in order to enable the Borough of Naugatuck to establish a police department. Section three provides:
 The board of police commissioners shall administer, maintain and control the department of police CT Page 4771 protection of the town and borough, and shall appoint all policemen, both members and officers including the chief of police, . . . all of whom shall hold office until reaching retirement because of age or disability, unless sooner removed for cause. The board shall set up all regulations pertaining to the police department, including standards governing the conduct and discipline of the members, officers and chief of police, standards governing the selection of members to the police department, and standards governing the promotions of members and officers in the police department, [said standards of selection and promotion to include written examinations.]
(Emphasis added.) Special Act 321, § 3.
In Special Act 321 the legislature has mandated that all promotions in the police department require a written examination. "Statutory provisions for civil service examinations must be strictly complied with to support the validity of the action of a municipal board concerned with promotions under civil service." [Walker v. Jankura],162 Conn. 482, 490, 294 A.2d 536 (1972). "It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil service system is built. [Cassella v.Civil Service Commission], 202 Conn. 28, 35, 519 A.2d 67 (1987). There is no provision in Special Act 321 granting the police commission the power to suspend the requirement of a written examination. "The board of police commissioners cannot abrogate the force of positive statutory provisions where the statute does not specifically grant it that power, and it was required to comply with those provisions without modification, abridgment or change." [Ziomek v. Barimole],156 Conn. 604, 609-10, 244 A.2d 380 (1968).
Accordingly, it is clear that the Police Commission did not have the power to suspend the legislatively mandated requirement of a written examination when selecting and promoting the position of the Deputy Chief of Police of Naugatuck.
In Special Act 321, the term "member" refers to "those persons in the department of police protection who hold the rank of regular patrolman." Special Act 321, § 9. The term "officer" refers to "those in the department of police protection who shall be above the rank of regular patrolman, but shall not mean CT Page 4772 the chief of police of said department." Id. "The chief of police shall be the titular head of the department of police protection." Special Act 321, § 10. Section 3 of Special Act 321 requires that the selection and promotion of "members" and "officers" requires a written examination.
In § 17 of Special Act 321, the legislature states that "[t]he chief of police and [the next highest rankingofficer] shall have the power to suspend members and officers from office for cause." (Emphasis added.) Special Act 321, § 17. Section 17 demonstrates that the legislature contemplated that there would be a second in command such as a deputy chief of police in the police department. However, the legislature did not exempt the deputy chief from the definition of "officer" which requires a written examination for selection and promotion. Nor did the legislature include a second in command under the definition of the "chief of police".
Therefore, it is submitted that the deputy chief is not an alter ego of the chief, rather the deputy chief is an officer who is subject to the requirement of a written examination.
Accordingly, the court enters a judgment of ouster against the defendant with costs to the plaintiff.
WEST, J.
[EDITORS' NOTE: SPECIAL ACT 321 IS ELECTRONICALLY NON-TRANSFERRABLE.]