THE STATE OF CONNECTICUT EX REL. GEORGE W. NEAL *vs.* FREDERICK H. BRETHAUER.

*First Judicial District, Hartford, March Term, 1910.

HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, JS.

*Quo warranto* proceedings will not lie to determine one's right or title to a position which is not a legally authorized and constituted public office as distinguished from a mere employment or agency.

A clerk in a city department, whose duties are confined to such matters of administrative detail as are assigned to him from time to time by the director of the department, is not a "public officer," nor is he invested with any sovereign functions of government; and therefore cannot resort to *quo warranto* proceedings to determine the validity of his removal from such a position or place.

The duties attached to a position—in this case the "examiner of records"—may be none the less clerical, detailed and delegated in their character, notwithstanding their performance may call for more than ordinary intelligence or a training and experience which most have not enjoyed.

A municipality cannot create a public office out of a clerical position merely by giving it a name and paying a salary to its incumbent.

One's service may be quite essential to the proper performance of governmental duties and functions, and yet he himself be without authority or duty other than that which some superior delegates to him, is responsible for, and controls.

Argued March 1st—decided March 15th, 1910.

INFORMATION in the nature of *quo warranto* to determine the respondent's right to the office or position of searcher of records in the department of public works of the city of New Haven, brought to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judgment rendered in favor of the relator, from which the respondent appealed. *Error; judgment reversed, and cause remanded for the rendition of a judgment dismissing the information.*

*Transferred from third judicial district.

The charter of the city of New Haven provides for the appointment of a director of public works, invests him with large duties and powers, and prescribes that he shall appoint such clerical assistance as may be necessary for his department, with salary to be fixed by the board of finance. It is provided that "it shall be the duty of said clerk or clerks to perform the clerical work of said board, and act as clerk of the department of compensation, and also to examine all transfers of real estate within the boundaries of said city which are matters of public record, and to make and preserve, for the use of the department or board, and for the use of all officers of said city, such abstracts of title to real estate as may facilitate the work of such department or board, or the work of any other department or officer of said city, and perform such other duties as may be by ordinance prescribed." 13 Special Laws, p. 412, § 77. The charter creates a civil service board, directs it to prescribe rules for civil service examinations for all applicants for position in the city government, save an enumerated few, and provides that no person holding a position in any of the city departments who are subject to such rules shall be removed "except for sufficient cause duly shown." An ordinance provides that "the clerk of the department of public works" shall keep a record of the proceedings and transactions of the department, and perform other prescribed duties. No ordinance provision is made for any other member of the clerical force or assistant in this department or under the director, and no duties are assigned to such clerk or assistant.

In 1901 the then director of public works appointed the relator to examine the records of transfers of real estate, and to make and preserve abstracts of title for the use of the department, and of such other officers of the city as might have occasion to avail themselves of

them. He did not fill the position of "clerk of the department" within the definition of the ordinance; neither did he perform any of the duties assigned by the ordinance to such clerk. His only duty was that described. His position came to be known as "examiner of records." Under that name an annual salary has been assigned to it in the annual budget of the board of finance, and the city year book, officially published, has contained the relator's name, with that title, in the list of persons holding place in the city government. Upon the adoption of the civil service rules in 1904, he passed the examination prescribed for the person performing the work to which he had been assigned, and thereupon received a new formal appointment, under which he thereafter occupied the position until May, 1908, when he was removed. His duties continued as before. The respondent was appointed in his place, and is now performing the duties of the position. It is unnecessary for the purposes of the opinion to recite the facts connected with this removal and appointment.

*Edward H. Rogers*, for the appellant (defendant).

*Robert C. Stoddard*, for the appellee (plaintiff George W. Neal).

PRENTICE, J. The relator seeks to be reinstated in a position from which he claims that he was unlawfully removed and is now unlawfully excluded. It will be unnecessary to inquire whether or not his removal was unlawful, unless it first appear that the position in question is a public office. These are *quo warranto* proceedings. To justify a resort to them, there must be an office legally authorized and constituted, whose incumbency is in question. *State ex rel. Stage* v. *Mackie*,

82 Conn. 398, 401, 74 Atl. 759. A public office, as that term is used in this connection, "is a right, authority and duty, created and conferred by law, by which an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. . . . It implies a delegation of a portion of the sovereign power to and possession of it by the person filling the office." *State ex rel. Stage* v. *Mackie*, 82 Conn. 398, 74 Atl. 759. This definition clearly indicates the two ultimate tests which are to be applied in determining whether a position is an office, or a mere employment or agency resting upon contract. It must, in the first place, as we had occasion to say in the case cited, have its source in the sovereign authority speaking through constitution or legislation. The second condition is that its incumbent, by virtue of his incumbency, becomes invested with some portion of the sovereign power which he is to exercise for the benefit of the public.

It is doubtful if either of these conditions are satisfied in the case of the position here in controversy. To be sure the New Haven city charter provides that the director of public works shall appoint such clerical assistants as may be necessary for his department; but there is disclosed to us no right or authority which is by the charter or other legislation committed to the particular clerkship which the relator claims the right to fill, and no duty imposed upon its incumbent except such ministerial ones as the director would have the common law right to delegate to others for their performance. But if it be assumed that, notwithstanding this fact, or by reason of the fact being otherwise, the charter provision suffices to give to such clerkship as the director may see fit to establish, or to this clerkship, a source in the sovereign power within the meaning of the requirement, it remains that the position is

not one whose incumbent can in any fair sense be said to be invested with some portion of that power, to be exercised by him for the benefit of the public. Whoever fills that position is doubtless engaged in the public service. But not every one who is so engaged is invested with functions of the sovereignty which he is called upon to exercise. If so, it would only be necessary to say that every person who is engaged in such service is a public officer. One's service may be quite essential to the proper performance of governmental duties and functions, and he yet be without authority or duty other than that which some superior delegates to him, is responsible for, and controls.

It is doubtless in one sense true that the ultimate and final source of all governmental service, of whatever grade or quality, is the sovereign power which is exercising its functions through the servant. The test which is to be applied, however, is not one which anticipates so strict a construction of language. It is not one which sees no distinction between a mayor of a city, for instance, and his stenographer, however varied the clerical duties entrusted to the latter may be, or between the members of a board of police commissioners and the janitor of a police-station employed by them, or between a park commissioner and a gardener he employs. All such persons are in a sense public servants; but it is plain to see that one set are invested with governmental powers which are attached to their positions, while the others are clothed with no such powers, and perform only duties of administrative detail which are delegated to them by a superior who is officially charged with their performance, and who controls and is responsible for that performance and the manner of it. Where the presence of these distinguishing features, of the one kind or the other, can be readily discerned, there can be no difficulty in discovering to

which class a given place belongs. Whether or not there is to be found in them the only criteria which would be of value under possible conditions we have no occasion to inquire, since the situation here presented is one whose true character is readily revealed when it is brought to the test of an examination in the light of the distinctions suggested.

The position in controversy exists only at the will and pleasure of the director of public works. No legislation, State or municipal, created it, or has confirmed its existence as a distinct official place. No right or authority is conferred upon its incumbent, or duty imposed upon him, except such as may from time to time be conferred or assigned by the director to this or that subordinate at his pleasure. There has been no legislation in the premises. All the authority or duties which can be conferred upon or assigned to the incumbent are such as attach to the director of public works as the head of a department, and that officer has full control over their exercise or performance, and is responsible therefor. He may, if he pleases, do all the things that the incumbent may do, or, at his option, delegate their doing to others. The duties performed by the incumbent are confined to matters of administrative detail, and are in no sense governmental as appertaining to an exercise of some sovereign function. The position is by the charter denominated clerical. Such we have formerly said that it was; and such it clearly is. *Thompson* v. *Troup,* 74 Conn. 121, 123, 49 Atl. 907.

If it be said that certain of these statements require modification, by reason of that language of the charter which calls for the examination of titles and the preparation and preservation of abstracts thereof for the benefit of all city officials, the answer is that this apparent imposition of a duty upon a subordinate is by

no means a real one. By reason of the nature of the work required, it would not be of controlling consequence if it was a real one; but it is not. The duty is cast upon no person or position in particular. In legal effect it is imposed upon the department, whose directing head is to provide a person to perform it. He is left free to dictate who that person shall be, may change his dictation from day to day, or subdivide the work. Undoubtedly he may do it himself, if he please. In whatever light the situation be looked at, it appears that in respect to both the relation of the clerk, who fills the place which the relator once filled, to his superior, and the nature and quality of that clerk's duties, the latter occupies the position of a subordinate to a principal who has chosen to act through him in the doing of matters of purely administrative detail. If a comparison be made between the situation here and those presented in the cases already referred to, for the illustration of palpable distinctions, it will be seen that the analogy between them is well nigh perfect, and that the unmistakable indicia of an employment, as distinguished from an office, appear.

It is urged, however, that in determining the character of the position in question, significance should be given to the facts that it is one which demands of its incumbent special technical knowledge, training, and experience; that it is known by a title which has had the sanction of incorporation into the official year book of the city and into the annual budget of the board of finance; that an annual salary has been appropriated to its incumbent by said board; that by virtue of the civil service rules prescribed by the legislature he has a tenure of office which protects him from removal except for cause shown; and that, when due importance is attached to these facts, it must be held that the position must be regarded as a public office, al-

though without these incidents it would not be so regarded.

This contention is unsound, in that it is based upon an appeal to certain incidents as tests which are in reality no true tests for the determination of the question whether a given person engaged in the public service is, in the performance of that service, invested with some portion of the sovereign power. The duties attached to the position in dispute are none the less clerical, detailed, and delegated in their character, for the reason that their performance may call for the exercise of a higher order of intellect than the ordinary, or a training and experience which most have not enjoyed. Neither do they for these reasons more naturally take on the character of an exercise of a function of the sovereignty. As respects the matter of title, it is enough to observe that this title has at best only a municipal origin and sanction, and that a municipality cannot by indirection more efficiently contribute to the creation of an office than it can by direct action. "The creations of the sovereign power cannot, in the absence of a delegated authority, create one." *State ex rel. Stage* v. *Mackie*, 82 Conn. 398, 401, 74 Atl. 759. The same observations may be made as to the matter of salary. Beyond this, there is nothing in the fact that a place is known by some convenient descriptive term, or that a salary is paid to the person who fills it, which furnishes any logical presumption that it has an official character. Tenure and duration of term have indeed been suggested as characteristics of an office as distinguished from an employment; but the situations in mind were those where the term was defined as an incident of the place, independently considered. In the present case there is no tenure or duration of term except such as incidentally results from the operation of a general civil service system which has been provided for in the city

charter, and which brings within its reach all persons holding positions in the city government, save only the elective officers, commissioners, officials appointed by the mayor, and superintendents, principals and teachers appointed by the board of education. 13 Special Laws, p. 422, § 118. Included (to select a few titles from the classification of the civil service board) are all clerks, copyists, bookkeepers, stenographers, typewriters, janitors, caretakers, farmers, gardeners and laborers. The weakness of the respondent's contention in this regard is thus well indicated by the results to which it would lead.

There is error, the judgment is set aside, and the cause remanded for the rendition of a judgment dismissing the information.

In this opinion the other judges concurred.