JAMES CARLETON *v.* CIVIL SERVICE COMMISSION OF THE CITY OF BRIDGEPORT ET AL.
(4710)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

---

[10] See footnote 2, supra.

Submitted on briefs October 24, 1986—decision released March 17, 1987

*Stephen F. Donahue* filed a brief for the appellant (defendant Louis Renkavinsky).

*Gregory P. Lynch* and *J. Kevin Golger* filed a brief for the appellee (plaintiff).

BIELUCH, J. The defendant[1] appeals from a judgment for the plaintiff in this quo warranto proceeding brought against the city of Bridgeport civil service commission (commission) and its superintendent of treatment plants, Louis Renkavinsky. The defendant claims that the trial court erred (1) in finding that the position of superintendent of treatment plants was a public office for purposes of a quo warranto action, (2) in finding that the plaintiff had standing to bring this action, and (3) in finding that the defendant could be ousted from his position after his permanent certification to it. We find no error.

The following facts found by the trial court are not in dispute. An open competitive examination was conducted by the commission for the position of superin-

---

[1] The complaint was brought against the city of Bridgeport civil service commission and Louis Renkavinsky. This appeal was filed on behalf of the defendant Renkavinsky only. As used in this opinion, the term defendant refers to Renkavinsky.

tendent of treatment plants for the city of Bridgeport. Louis Renkavinsky received a grade of 93.6 percent, the highest score on this exam. On April 27, 1984, he was temporarily certified to the position. Following a six month probationary period, Renkavinsky was permanently certified to the position.

The plaintiff had also taken the examination and obtained the second highest score, 89.4 percent, on the test. On May 21, 1984, during the defendant's probationary period, the plaintiff brought a mandamus action against the commission, in which Renkavinsky intervened, requesting that the commission add five points to his rating for a total and leading score of 94.4 percent, under the provisions of General Statutes § 7-415[2] allowing such credit to veterans for wartime service. The trial court granted the relief requested by the plaintiff and five points were added to the plaintiff's score, thereby giving him the highest overall score on the test. No appeal was taken from that decision by either the commission or Renkavinsky. The commission, however, thereafter refused to certify the plaintiff to the position of superintendent.

The plaintiff then commenced this quo warranto action, requesting that the commission and Renkavinsky establish the latter's legal right to the office of superin-

---

[2] General Statutes § 7-415 provides: "Any veteran who served in time of war, if he is not eligible for disability compensation or pension from the United States through the Veterans' Administration and if he has attained at least the minimum earned rating on any examination held for the purpose of establishing an employment list for original appointment shall have five points added to his earned rating. Any such veteran, if he is eligible for such disability compensation or pension and if he has attained at least the minimum earned rating on any such examination, shall have ten points added to his earned rating. Names of veterans shall be placed on the list of eligibles in the order of such augmented rating. Credits shall be based upon examinations with a possible rating of one hundred points. No such points shall be added to any earned rating in any civil service or merit examination except as provided in this section, the provisions of any municipal charter or special act notwithstanding."

tendent of treatment plants. The trial court found that the position of superintendent of treatment plants was a public office. Therefore, the incumbency of that office was subject to challenge by a quo warranto proceeding. It also found that Renkavinsky was not appointed in accordance with the requirements of the law. Consequently, his certification to that position was invalid. It concluded by finding that Renkavinsky held his position de facto, rather than de jure, and that the office or position of superintendent was vacant.

The defendant's first claim is that the trial court erred in finding that the position of superintendent was a public office for purposes of a quo warranto proceeding.[3] An action in the nature of quo warranto may be brought to challenge a person's legal authority to hold public office. *State ex rel. Neal* v. *Brethauer,* 83 Conn. 143, 145–46, 75 A. 705 (1910). It may not be used to challenge the appointment of a mere governmental employee. Id., 146–47; see 17 E. McQuillin, Municipal Corporations (3d Ed. Rev.) § 50.07.

In order for a governmental position to constitute a public office falling under the quo warranto statute, two conditions must exist: (1) it must have its source in a sovereign authority speaking through the constitution or legislation; and (2) its incumbent, by virtue of his incumbency, must be invested with some portion of the sovereign power which he is to exercise for the benefit of the public. *State ex rel. Neal* v. *Brethauer,* supra, 146. The trial court found that "[t]he obligation to provide for sewage disposal and, therefore, treatment thereof,

---

[3] General Statutes § 52-491 is the statutory authorization for quo warranto proceedings, and provides: "When any person or corporation usurps the exercise of any office, franchise or jurisdiction, the superior court may proceed, on a complaint in the nature of a quo warranto, to punish such person or corporation for such usurpation, according to the course of the common law and may proceed therein and render judgment according to the course of the common law."

is fixed upon the City of Bridgeport by obligation from the state, pursuant to its charter." General Statute § 7-148 (c) provides that "[a]ny municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general statutes: . . . (6) (B) (i) Lay out, construct, reconstruct, repair, maintain, operate, alter, extend and discontinue sewer and drainage systems and sewage disposal plants . . . ." The duties prescribed for the superintendent of treatment plants and specified in the notice of open competitive examination by the commission were as follows: "Responsible supervision of the administration, operation and maintenance of the entire sewerage system, including the treatment plants. Exercises direct authority over all plant functions and system personnel, in accordance with approved policies and procedures."

The defendant argues that the position of the superintendent of treatment plants is not provided for in the city charter and is, therefore, not a public office. We disagree with this argument. The failure of a position to be enumerated specifically in a city charter does not require the conclusion that such position is not a public office. All that is required is that the powers and duties of the position have their source in sovereign authority and that such position be invested with some portion of such sovereign power to be expended for the benefit of the public. *State ex rel. Neal* v. *Brethauer,* supra. The powers exercised by the superintendent of treatment plants are exercisable because of the authority imposed by the state upon the municipality pursuant to General Statutes § 7-148 (c) (6) (B) (i). The trial court found that the office was responsible for the supervision of administration and operation of the entire sewage system, including treatment plants. Its duties also included direct authority over all plant functions and system personnel in accordance with approved policies and procedures.

We agree with the trial court's conclusion that the position of superintendent constitutes a public office for the purpose of a quo warranto action. See, e.g., *Beccia* v. *Waterbury,* 192 Conn. 127, 470 A.2d 1202 (1984) *(Beccia II)* (fire marshal); *Cheshire* v. *McKenney,* 182 Conn. 253, 438 A.2d 88 (1980) (town councilman); *State ex rel. Gaski* v. *Basile,* 174 Conn. 36, 381 A.2d 547 (1977) (fire chief); *State ex rel. Giusti* v. *Barbino,* 170 Conn. 113, 365 A.2d 408 (1976) (members of municipal boards).

The second issue is whether the trial court erred in finding that the plaintiff had standing to bring this action. The defendant argues that an individual is not entitled to the remedy of quo warranto where that individual lacks a clear and immediate right to the position in question. In support of this argument, he cites *Andrews* v. *New Haven,* 153 Conn. 156, 215 A.2d 102 (1965) (writ of mandamus); and *Chambers* v. *New Haven,* 31 Conn. Sup. 362, 331 A.2d 347 (1974) (permanent injunction). Neither case involved a quo warranto proceeding. They are, therefore, inapposite to the question now under consideration.

Underlying the defendant's claim is his contention that the examination should have been "promotional" rather than "open competitive." He maintains that the plaintiff lacks a clear and immediate right to the position because he was not a legitimate candidate for a "promotional" examination as there were two or more persons of inferior rank within the department who were eligible and who had applied for this test.[4] This

---

[4] Section 9 of the Rules of Civil Service Commission provides in relevant part: "The personnel director shall, from time to time, as conditions warrant, hold tests for the purpose of establishing employment lists for the various positions in the competitive division of the classified service. Such tests shall be public, competitive and open to all persons who may be lawfully appointed to any position within the class for which such examinations are held with limitations specified in the rules of the commission as

argument is without merit and misconstrues the nature of a quo warranto proceeding. A quo warranto action seeks to oust an illegal incumbent from public office, not to induct a rightful claimant into the office. A successful action in quo warranto ousts the wrongful office holder and declares the position vacant. Once the quo warranto action declares the contested office vacant, a claimant may then proceed in mandamus to seek his own appointment to the position if he can establish his own clear legal right thereto. *Beccia* v. *Waterbury*, 185 Conn. 445, 456–57, 441 A.2d 131 (1981) (*Beccia I*); *State ex rel. Eberle* v. *Clark*, 87 Conn. 537, 540–41, 89 A. 172 (1913); *State ex rel. Comstock* v. *Hempstead*, 83 Conn. 554, 559, 78 A. 442 (1910); *State ex rel. Oakey* v. *Fowler*, 66 Conn. 294, 300–301, 32 A. 162 (1895). This procedure is illustrated in *Beccia II*, supra. In that case, following the decision in *Beccia I*, supra, the plaintiff brought two independent actions in the trial court. In the first action, in quo warranto, he successfully ousted the incumbent from the position of city fire marshal, which was then declared to be vacant. In the

to residence, age, health, habits, moral character and prerequisite qualifications to perform the duties of such position, provided applicants shall be citizens of the United States. Promotion tests shall be public, competitive and free only to all persons examined and appointed under or holding an office or position by virtue of section six of this act and who have held a position for one year or more in a class or rank previously declared by the commission to involve the performance of duties which tend to fit the incumbent for the performance of duty in the class or rank for which the promotion test is held. Efficiency and seniority in service shall be considered in connection with tests whenever there shall be an opening in a superior class to be filled. The examination shall be open to those in inferior rank in the same class, the duties of which directly tend to fit the incumbents thereof for the performance of the duties of the superior grade. A person who has served less than one year in a lower grade shall not be eligible for a promotion. *If fewer than two persons submit themselves for a promotion test, or if, after such test has been held, all applicants shall fail to attain a general average of not less than the minimum standard fixed by the rules of the commission, said director shall forthwith hold an original entrance test and certify from the employment list resulting therefrom. . . .*" (Emphasis added.)

second action, seeking an order of mandamus, he unsuccessfully sought to secure his own appointment as fire marshal. The actions of the trial court were upheld on appeal.

The standing to proceed in quo warranto is determined by the nature of the interest of the relator in the contested public office. The government which created the office in question may, of course, institute such an action. One entitled to claim the office, such as the plaintiff here, has the requisite interest in the office giving him standing to seek such a writ. 65 Am. Jur. 2d, Quo Warranto § 74. A taxpayer qualifies for standing because as such he is interested in having the duties annexed to the several public offices recognized by the city charter performed by persons legally elected or appointed thereto whether or not another person claims the office. *State ex rel. Waterbury* v. *Martin,* 46 Conn. 479, 482 (1878). The plaintiff was a proper party to institute this quo warranto action to test the defendant's right to hold office de jure.

The defendant's final claim is that the trial court erred in finding that the defendant could be ousted from his position following his permanent certification. He argues that the plaintiff, by failing to take steps to stop the defendant's permanent certification, has waived any right he may have possessed to challenge the defendant's appointment. We do not agree that the failure of the plaintiff to enjoin the commission's permanent certification of the defendant constituted a waiver of his right to challenge the appointment in this quo warranto proceeding.

"[Q]uo warranto is the exclusive method of trying the title to an office . . . ." *Scully* v. *Westport,* 145 Conn. 648, 652, 145 A.2d 742 (1958). The legality of a public office is not determined or established by the temporary or permanent nature of the incumbent's

appointment, and its legality is subject to challenge by quo warranto during the entire period of incumbency. Because of the public's interest in its government by legal public officers, there can be no waiver of quo warranto entitlement by inaction during the passage of time. The defendant's appointment was void ab initio, and was not cured by his serving of a probationary period and obtaining permanent certification. Since at all times he exercised the powers of the office de facto, and not de jure, he is subject to removal by quo warranto.

There is no error.

In this opinion the other judges concurred.