[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (QUO WARRANTO and MANDAMUS)
The plaintiff, who was duly elected in July, 1999 to a three year term as a Commissioner of the Allingtown District Board of Fire Commissioners in West Haven, has filed a[1] quo warranto action, pursuant to General Statutes § 52-491 through § 52-494 inclusive, contesting the defendant DeLoatch's lawful right to hold the position of Fire Commissioner. DeLoatch was appointed to said Board as a result of an "impeachment" of the plaintiff and the removal of the plaintiff from his elective position as a Fire Commissioner. The plaintiff's elective term of office was not due to expire until June 30, 2002. The defendant DeLoatch's appointment to the Board is for the unexpired portion of the plaintiff's original elective term.
Plaintiff alleges that on June 28, 2001, the defendants Aaron Haley and Calvin DeLoatch, the remaining two members of the Fire Commission illegally convened and conducted an illegal "impeachment" hearing of the CT Page 10045 plaintiff. Thereafter, on the same evening, June 28, 2001, the two defendants voted affirmatively to impeach the plaintiff and terminate the plaintiff from his position as an elected member of the Allingtown District Board of Fire Commissioners.
The defendant DeLoatch's term of office as a "fire commissioner" later expired on June 30, 2001 several days following the plaintiff's impeachment and termination from his position. DeLoatch had failed to be elected to his own additional three year term when he lost in an election held in May, 2001. However, on July 3, 2001, five days after the impeachment and removal of the plaintiff from the "Fire Commission," the defendant Haley acting as Chairman of the Board of Fire Commissioners, selected DeLoatch to fill the vacancy caused by the plaintiff's removal, allowing the defendant DeLoatch to continue serving on the Commission for the unexpired portion of the plaintiff's term.
The plaintiff has filed this action sounding in quo warranto, challenging the defendant DeLoatch's lawful right to hold the position of Fire Commissioner to serve the unexpired portion of the plaintiff's elective term. In this action against defendant DeLoatch and Haley, and the Allingtown District Board of Fire Commissioners, the plaintiff claims that DeLoatch was not lawfully and properly appointed to the Commission by the defendant Haley, as that his subsequent impeachment and the termination of the plaintiff were illegal. Therefore, the plaintiff argues, DeLoatch has no right to said office or to exercise the rights, powers and privileges thereof. It is the plaintiff's position that, since July 3, 2001, the defendant DeLoatch has held said position of Fire Commissioner unlawfully and to the exclusion of the plaintiff, despite the fact that it is the plaintiff who retains the lawful right to his office until the expiration of the term of office on June 30, 2002.
The plaintiff demands that the defendant DeLoatch be required to answer to the court by what warrant DeLoatch claims to hold the office of Fire Commissioner and to exercise the right, powers and privileges there.
The plaintiff has also filed a second action against the defendants sounding in[2] pursuant to General Statutes § 52-485, seeking to be restored to his position as a Fire Commissioner, so that he may continue to serve the unexpired portion of his elective term.
The plaintiff, in the companion mandamus action, claims that the "Impeachment Hearing" conducted by the defendants, DeLoatch and Haley, who were fellow members of the Board of Fire Commissioners, and their subsequent vote to remove the plaintiff from his elected position, were unlawful acts. That by doing so, the defendants breached a duty to the plaintiff and the voters who elected the plaintiff, not to abridge the CT Page 10046 exercise of the plaintiff's rights, powers and privileges as a Fire Commissioner during his three year term of office.
The plaintiff, in the mandamus action, is requesting that the court order that the "Impeachment Hearing", the defendants' vote of impeachment and the termination of the plaintiff from his duly elected position as Fire Commissioner be declared null and void, and that the plaintiff be restored to his elective position.
The defendants have requested that the actions for quo warranto and mandamus be consolidated and on July 23, 2001, the court granted this request. The parties to both actions are identical, as are the factual circumstances and allegations in issue. The parties have also agreed that the court could conduct one evidentiary hearing to address both the quo warranto action and the mandamus action for the sake of judicial economy, and to avoid repetitious and duplicative evidentiary hearings. The court's Memorandum of Decision will address both the quo warranto action and the mandamus action and will be dispositive of all issues bearing the above-listed docket numbers.
Actions in quo warranto are governed by General Statutes § 52-491. A successful quo warranto action unseats an illegal office holder and declares the position vacant. It does not place the rightful claimant into the office. New Haven Firebird Society v. Board off FireCommissioners, 219 Conn. 432, 436, 593 A.2d 1383 (1991). If the claimant can thereafter establish his clear right to the position, he may bring an action in mandamus to seek his own appointment. Beccia v. Waterbury,185 Conn. 445, 456-57, 441 A.2d 131 (1981).
In a quo warranto proceeding, the title challenged must be to a public office. New Haven Firebird Society v. Board of Fire Commissioners,
supra, 436; State ex rel. Stage v. Mackie, 82 Conn. 398, 400, 74 A. 759
(1909). There are two criteria to determine whether a governmental position constitutes a public office within the meaning of the quo warranto statute: (1) It must have its source in a sovereign authority speaking through the constitution or legislative; and (2) its incumbent, by virtue of his incumbency, must be vested with some portion of the sovereign power which he is to exercise for the benefit of the public.State ex rel. Neal v. Brethauer, 83 Conn. 143, 146, 75 A. 705 (1910).
In proceedings in the nature of quo warranto, the object is to test the actual right to the office and not merely a use under color of right.Marsala v. Bridgeport, 15 Conn. App. 323, 328, 544 A.2d 191 (1988); Stateex rel. Southey v. Lashar, 81 Conn. 540, 545, 542 A. 636 (1899). "It is well established that in quo warranto proceedings the burden is upon the defendant to show a complete title to the office in dispute." Marsala v.CT Page 10047Bridgeport, supra, 328; State ex rel. Gaski v. Basile, 174 Conn. 36, 38,381 A.2d 547 (1977); see State ex rel. Barlow v. Kaminsky, 144 Conn. 612,616, 136 A.2d 792 (1957); State ex rel. Wallen v. Hatch, 82 Conn. 122,125, 72 A. 575 (1909); State ex rel. Reiley v. Chatfield, 71 Conn. 104,40 A. 922 (1898); Cheshire v. McKenney, 182 Conn. 253, 256-57, 438 A.2d 88
(1980); see also Beccia v. Waterbury, supra, 456-57.
Mandamus is the proper remedy for reinstatement of a public officer who, despite a clear legal right to remain in office, has been wrongfully ousted from that position. Hennessey v. Bridgeport, 213 Conn. 656,569 A.2d 1122 (1990); State ex rel. Comstock v. Hempstead, 83 Conn. 554,556, 78 A. 442 (1910); Thompson v. Troup, 74 Conn. 121, 124, 49 A. 907
(1901); see also Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168-73 (1803). The writ of mandamus is an extraordinary remedy to be applied only under exceptional circumstances, and is not to be extended beyond its well-intentioned limits. Lahiff v. St. Joseph's Total AbstinenceSociety, 76 Conn. 648, 651, 57 A. 692 (1904); McAllister v. Nichols,193 Conn. 168, 171, 474 A.2d 792 (1984). Furthermore, "[m]andamus neither gives nor defines rights which one does not already have. It enforces, it commands, performance of a duty. It acts at the instance of one having a complete and immediate legal right; it cannot and it does not act upon a doubtful or a contested right. . . ." State ex rel. Comstock v.Hempstead, supra, 561; McAllister v. Nichols, supra, 171-172.
A party seeking a writ mandamus must establish: "(1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law."Hennessey v. Bridgeport, supra, 659; Vartuli v. Sotire, 192 Conn. 353,365, 472 A.2d 336 (1984); Harlow v. Planning Zoning Commission,194 Conn. 187, 196, 479 A.2d 808 (1984). Satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus. Hackett v. New Britain, 2 Conn. App. 225, 229,477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984). "In deciding the propriety of a Writ of Mandamus, the trial court exercises discretion rooted in the principles of equity." Hennessey v. Bridgeport,
supra, 659; Sullivan v. Morgan, 155 Conn. 630, 635, 236 A.2d 906 (1967).
 I.
With this procedural posture in mind, we turn first to the facts which the court finds to be proven and supported by the affidavits, exhibits, documents submitted by the parties, including a transcript of the impeachment hearing held on June 28, 2001 and the testimony of the witnesses, Samperi, Haley and DeLoatch. CT Page 10048
The plaintiff and the two defendants comprised the three member Board of Fire Commissioners for the Allingtown Fire District. The plaintiff was elected by the voters of said district to a three year term in June, 1999. In June, 2000, defendant Haley was also elected for a three year term. The remaining defendant, DeLoatch, was appointed by defendant Haley to fill a vacancy on the Board as a result of the resignation of a former commissioner that became effective July 31, 2000. Defendant DeLoatch's appointment to fill this vacancy was for the unexpired balance of a term which ended on June 30, 2001. Each Commissioner is paid by the Fire District the sum of $1,000 per year during their term on the Board.
On June 6, 2001, during the Fire District's monthly public meeting, the Board, by a 2-to-a majority, voted to hire Elmer Henderson as the District's Fire Chief. The plaintiff did not vote, while the two defendants voted in favor of Henderson. This vote came after long and heated private and public debate between the plaintiff and the defendants regarding Henderson's professional qualifications, it is claimed by the defendants that, during private conversations, public forums and newspaper interviews during May, 2001 and June, 2001, that the plaintiff, Samperi, made remarks regarding race and the gay and lesbian community that could be considered and interpreted to be inflammatory, insensitive and racially biased toward Henderson, who is an African-American, the minority members of the community comprising the district, and the gay and lesbian community. It is noted for the purposes of placing the plaintiff's comments in context, that the defendants are of African-American heritage and the plaintiff is a Caucasian. The alleged remark of the plaintiff which has sparked the most controversy allegedly occurred on June 6, 2001, when the defendants voted in favor of hiring Henderson. Immediately after this vote, it is alleged that the plaintiff said, "There goes the neighborhood." The defendants and their supporters in the community have interpreted that remark as a racist and discriminatory comment and "a serious breach of ethics." However, no witnesses were presented in court to testify that they actually overheard the plaintiff make this comment at the meeting of the Board of Fire Commissioners on June 6, 2001. The transcript of the June 28, 2001 "impeachment hearing does reveal, as previously noted, that three people testified that they overheard this allegedly racist comment, but for unexplained reasons, the defendants never presented them as witnesses to testify at this trial.
The plaintiff, in subsequent public comments, continuously denied that this comment was made or that any of his comments were racist, and that the dispute was solely over the qualifications of Henderson to be hired as the Fire Chief. In the New Haven Register, dated May 23, 2001, the plaintiff is quoted as saying: "I'm not doing this because the guy [Henderson] is black." "Haley wants this to be a racial issue; it's CT Page 10049 not."
Prior to the vote to hire Henderson on June 6, 2001, community activists began calling for the plaintiff's recall and removal from office. Defendant, DeLoatch, is quoted on May 25, 2001 as having said, "I see it is time for a change, and these attitudes, coming from a commissioner [Samperi], are inappropriate."
On or about June 9, 2001, both defendants were quoted as saying they would sign a petition being circulated by the West Haven Black Coalition calling for Samperi's ouster from the Board. Defendant DeLoatch did actually sign and circulate the petitions and defendant Haley was aware that his own brother was also circulating the petitions. Certainly, defendant DeLoatch's impartiality regarding a fair and impartial judgment of the plaintiff was compromised by these actions.
On or about June 16, 2001, the defendants, constituting a quorum and a majority of the Board's membership, voted to commence impeachment proceedings against the plaintiff. At this June 16, 2001 meeting attended by the two defendants, defendant Haley appointed himself and defendant DeLoatch as a two person "Ethics Commission" to investigate the allegations against the plaintiff regarding alleged racist comments and discrimination attributed to the plaintiff. This formulation of an Ethics Commission was necessary in the defendants view because no Ethics Commission had existed in the Allingtown Fire District previously. The court finds that the District had not previously formulated a code of ethics and no code of ethics had ever been voted on or adopted by the District.
After reviewing community petitions calling for the plaintiff's removal from the Board, "complaints-from the public", and newspaper articled, the two defendants concluded that "the appropriate action was an impeachment hearing." Acting as the Ethics Commission, they recommended to themselves, as a majority quorum of the Board, that the Board schedule an impeachment hearing. The defendants, thereafter, acting in their capacity as Commissioners of the Fire District, voted to schedule an impeachment hearing for June 28, 2001. According to defendant Haley's sworn affidavit dated July 17, 2001, the purpose of this "impeachment" hearing was to investigate allegations against Samperi, by members of the District, particularly during the last ten days, and "take any appropriate action." A list of charges to which the two defendants, acting in the capacity of Ethics Commission, found "probable cause" were "broken down and itemized" for communication to the plaintiff by the District's legal counsel.
Prior to the hearing on June 28, 2001, the defendants broadened and increased the scope of the impeachable offenses against the plaintiff by CT Page 10050 adding additional charges regarding "financial misdoings", according to statements attributed to the Board's legal counsel. No evidence of financial misconduct by the plaintiff has ever been submitted by the defendants during the impeachment proceeding or the trial. By the time of the "impeachment hearing" on June 28, 2001, the plaintiff had been notified of 13 pending "charges of impeachment" most of which the Board's legal counsel characterized as "violations of state ethics law." Also, by way of a letter from the Board's legal counsel to the plaintiff, dated June 22, 2001, the plaintiff was notified that the impeachment proceeding was justified by General Statutes[3] § 7-148i through § 7-148n, inclusive, and[4] § 1-82 through § 1-84, inclusive. This letter also informs the plaintiff that "[t]he specific Connecticut General Statutes that you have breached reflected in our Impeachment Charge Sheet are as follows:[5] § 46a-59, 1-84, 7-148i and[6] 7-148." The court finds that none of the 13 charges listed on the[7] Impeachment Charge Sheet delivered to the plaintiff for use at the June 28, 2001 hearing carry any reference to a violation of state statutes as they pertain to any or all of the enumerated Impeachment Charges. The plaintiff was not sufficiently informed of the specific charges against him and was denied due process of law.
The plaintiff, in filing his actions sounding in mandamus and quo warranto, affixed a photocopy of the official transcript of the "impeachment proceedings" held on June 28, 2001 as an exhibit for the court's review and reference.
The transcript reveals and the court finds that the defendant Haley, as Chairman of the Allingtown District Board of Fire Commissioners, called the meeting to order. Defendant DeLoatch and plaintiff Samperi, who was represented by private legal counsel, were present. Despite the fact that the plaintiff was a member of said Board and in this official capacity had been previously represented by the Board's legal counsel, this same attorney was now present to advise the defendants, who were prosecuting the impeachment charges against the plaintiff.
The Board's attorney then explained the format of the impeachment proceedings and began to read the list of impeachment charges when objections from the audience and Samperi's counsel caused the two defendant Commissioners to call a recess of the proceedings. Following the recess, the Board's attorney once again began to read the charges against the plaintiff. To each of these charges, Samperi's counsel replied that, on his advice, the plaintiff would not reply to any of the charges.
Following the reading of the charges, plaintiff's counsel requested a cancellation of the hearing, stating that "there is no lawful authority CT Page 10051 for such a hearing." Plaintiff's counsel then proceeded to inform the defendants that Samperi was an elected official who had a term of office that would not expire until June 30, 2002, and that Article 9 of the Connecticut Constitution authorizes impeachment only of "the governor and all other executive and judicial officers." Plaintiff's counsel also advised the defendants that the Board had no powers to recall an elected official. Plaintiff's counsel specifically challenged the jurisdiction of the defendants and the Board of Fire District Commissioners to conduct an impeachment hearing of the plaintiff. The defendants refused to cancel the hearing.
Plaintiff's counsel then demanded that the defendants Haley and DeLoatch recuse themselves and disqualify themselves, stating that they were essential fact witnesses and they had already prejudged the issues. Counsel informed the defendants that he was prepared to call the defendants as witnesses when defending Samperi. Once again, the defendants refused.
Samperi's counsel then moved to disqualify the Board's legal counsel stating that the plaintiff intended to tall him as a fact witness as well. Samperi's counsel claimed that the Board's attorney had a conflict of interest as he was now advising two members of the Board against a third member of the Board, that being the plaintiff. Defendant Haley's response to these objections was "we are going to move forward," in essence, denying the plaintiff's requests. At that time, the plaintiff and his counsel left the hearing, refusing to recognize the jurisdiction of the Board and the legitimacy of the proceedings. The court agrees with the objections of the plaintiff and his counsel.
The hearing then commenced and defendant Haley proceeded to call three witnesses to testify that they overheard the plaintiff utter the phrase "There goes the neighborhood", at the June 6, 2001 meeting of the Board.
A fourth witness stated that she did not hear the comment, but that she was told of it, and that it was a demeaning comment and insulting to the African American community. She also testified that she had read newspaper articles regarding the comment and another comment by the plaintiff regarding the gay and lesbian community. Each witness was administered an oath by the Board's attorney, and all questioning and direct examination of these witnesses was conducted by defendant Haley.
Upon the completion of witness testimony and prior to any deliberations regarding a decision as to "impeachment" or termination of the plaintiff, defendant Haley addressed the members of the audience and made the following remarks:
CT Page 10052 "The real reason why we are here tonight to have this hearing is because we felt that, as an elected official, someone making these kind of remarks and comments should no longer be an elected official representing this community."
The court finds that defendant Haley was not an impartial tribunal and that he had prejudged the defendant prior to instituting the impeachment proceeding against the plaintiff. The defendants then called a recess to go into executive session to "discuss the issues." Upon defendant Haley and DeLoatch's return to public session, defendant DeLoatch made a motion to terminate plaintiff Samperi on violations 1, 6, 8, 9, 10 and 11 of the Impeachment Charge Sheet. Defendant Haley then seconded the motion. Both defendants then voted in favor of "impeaching" the plaintiff based on those enumerated violations. A subsequent vote by the two defendants to terminate the plaintiff as a member of the Board of Fire Commissioners also passed with each defendant voting in favor of the motion.
On June 29, 2001, the defendants sent a "notice and letter" notifying the plaintiff of its decision to "impeach and terminate" the plaintiff from his elected position. On July 3, 2001, the plaintiff attempted to attend the regular monthly meeting of Board and was denied status as a commissioner of said Board. At that meeting, defendant Haley declared that the plaintiff's position was now vacant, and proceeded to appoint the defendant DeLoatch to serve the balance of the plaintiff's unexpired term. As previously mentioned herein, DeLoatch's own term had expired on June 30, 2001, two days after he had voted with defendant Haley against the plaintiff. DeLoatch had been unsuccessful in the May, 2000 election for the Board of Fire Commissioners, in an attempt to win his own three year term. In his sworn affidavit, dated July 17, 2001, defendant DeLoatch states that "I did not consider that I would be asked to serve if Samperi was terminated from his seat during the impeachment. . . ." The court finds no credibility in defendant DeLoatch's statement.
The court is convinced that DeLoatch and Haley had planned to fill the plaintiff's position with DeLoatch prior to terminating the plaintiff as a result of the plaintiff's impeachment.
On July 23, 2001, the court conducted an evidentiary hearing to decide the merits of the defendants' motion to dismiss the action, challenging the subject matter jurisdiction of the court, to hear the quo warranto action and the mandamus action. On July 23, 2001 and July 24, 2001, the court issued memorandums of decision, in both the mandamus and quo warranto actions, denying the motion to dismiss and asserting the court's right to jurisdiction over the subject matter. CT Page 10053
In those decisions, the court stated that (1) the impeachment proceedings were illegal; (2) the defendants, though acting under the guise of their official capacities as fire commissioners, could be sued in their capacity as individuals; (3) that the plaintiff did not have to exhaust his administrative remedies, where no such remedies existed; and (4) that exclusive jurisdiction over quo warranto and mandamus actions are reserved to the superior court.
The evidentiary hearing lasted three days. Testimony was received from the defendants, DeLoatch and Haley, and from the plaintiff, Samperi. Additional documents and exhibits were offered by each side. In reviewing the evidence, the court will recite its following finding of facts which are in addition to those just recited, herein.
The dispute between the plaintiff and the defendants that led to the plaintiff's impeachment and ultimate termination from his elected position as a fire commissioner had its roots in March, 2001. At that time, due to the resignation of the Allingtown Fire District's Fire Chief, the defendants and the plaintiff began the task of recruiting and selecting a new fire chief. They agreed that the position should be advertised and that these ads would be placed in several newspapers, among them, the New Haven Register and the West Haven News.
The content of the ad was to contain the qualifications for the position of Fire Chief. The parties agreed that a Bachelor's of Science degree in fire administration and three years of supervisory experience were to be necessary qualifications. This agreement as to the necessary qualifications occurred at a meeting of the Commissioners on or about March 7, 2001. Plaintiff and the two defendants were the three members of the Commission. This ad containing these qualifications was published in several newspapers, including the New Haven Register and the West Haven News, during March, 2001.
The aforementioned ad ran only once due to the fact that Commissioners Haley and DeLoatch, without consulting the plaintiff, and without a vote of the Commission, agreed to change the ad by eliminating the requirement of a Bachelor of Science in fire administration. In its place, the defendants inserted the term "advanced academic training." This ad was then republished at the defendant Haley's instruction and insistence. It is noted that the original ad requiring the Bachelor of Science degree elicited 19 to 20 responses from applicants for the position of fire chief. Once the revised ad was published, one additional response was received; that being from Elmer Henderson. The plaintiff, upon noticing the revised ad and revised job qualifications, protested the change in the job qualifications to Chairman Haley, who admitted authorizing the change without consulting the plaintiff. CT Page 10054
Subsequently, nine applicants were interviewed by all three Commissioners, including the plaintiff. On May 7, 2001, a Commission meeting was to be held to discuss ongoing labor negotiations between the Commission and the firefighter's union, however, the meeting was canceled. However, a discussion ensued between the plaintiff and the defendant Haley regarding each one's choice for the position of Fire Chief. It was during this discussion that it was revealed that the plaintiff, defendant DeLoatch and defendant Haley were each backing a different candidate for fire chief. As negotiations continued between the plaintiff and Haley, the two of them finally agreed to support applicant William Abbot. This choice was not the person being backed by defendant DeLoatch, who was not present. The plaintiff and defendant Haley agreed that they would cast their two votes for Abbot at the next meeting of the Fire Commission. Their two votes would be sufficient to secure the position of Fire Chief for Abbot.
The defendant Haley left the presence of the plaintiff and sought out a newspaper reporter who was present to cover the Commission's proceedings. Within five minutes and without notifying the plaintiff, the defendant Haley informed the newspaper reporter that Haley and defendant DeLoatch would vote for Elmer Henderson to be the next Fire Chief. Haley testified that he changed his mind in the five minute period it took to seek out the newspaper reporter. The court does not find his excuses for breaking his word and his informal agreement with the plaintiff to be credible.
The Commissions' monthly meeting was then scheduled for June 5, 2001, at which time it was the intent of the defendants to select Henderson as the new Fire Chief. However, due to the lack of compliance with Freedom of Information regulations regarding proper notice for the meeting and advance posting of an agenda, it was rescheduled for June 6, 2001. Despite a lack of compliance with Freedom of Information regulations that allowed the plaintiff twenty-four hours notice of the rescheduled meeting for June 6, 2001, the June 6, 2001 meeting did occur. At this June 6, 2001 meeting, the plaintiff vehemently objected to not being able to discuss the prospective hiring of Henderson as the new fire chief. He also objected that he had received only a handwritten notice of the rescheduled June 6, 2001 hearing, and that it had not been delivered to him 24 hours prior to the meeting's commencement. By all accounts, the meeting was interrupted many times by the supporters of Henderson who were present to see him selected as the next fire chief. After completing his remarks, objecting to the proceedings and the lack of qualifications of Henderson, the plaintiff left the meeting. Thereafter, the defendants DeLoatch and Haley voted to confirm Henderson as the new fire chief. Their unanimous 2-0 vote represented a quorum and a majority of the CT Page 10055 Commission.
The defendants claim that, as the plaintiff left the meeting, several persons heard him utter the phrase, "There goes the neighborhood." However, as mentioned previously, no witnesses appeared in court to testify that the plaintiff said this remark. The plaintiff, while unable to remember his exact comments, stated that he believed he said words to the effect of, "God save the Allingtown Fire District," or "There goes the Allingtown Fire District." The court makes no finding regarding the exact contents or wording of the comments of the plaintiff on the evening of June 26, 2001 that led the defendants to seek the illegal impeachment and removal of the plaintiff from his elected position.
On June 15, 2001, the plaintiff received a telephone call from the defendant Haley at approximately 6:30 p.m. notifying the plaintiff of a "special" Commission meeting scheduled for June 16, 2001 at 3:00 p.m. The plaintiff requested that the meeting be held at a different time, stating he was unable to attend. The plaintiff asked the defendant Haley what the meeting was about. Haley responded that he wanted to review an ongoing legal matter involving petitions to terminate or consolidate the fire district, and petitions that Haley had received demanding the recall and removal of the plaintiff from the Board of Fire Commissioners. It is noted that petitions had been circulated for the recall of the plaintiff since May, 2001. The petition drive had been started by the West Haven Black Coalition and Carol Brown. Defendant DeLoatch has admitted he helped circulate these petitions and had also signed a petition. Defendant Haley admitted that he had been aware of the petitions and that even his brother was circulating the petitions.
The court finds that during this phone call, the plaintiff informed the defendant that state and local law did not allow any recall and removal of the plaintiff from his elected position, but that the defendant Haley told the plaintiff that the plaintiff was going to be removed from office.
The court finds that subsequent to the conversation with defendant Haley, the plaintiff received a telephone call from the Commission's legal counsel. While he was reluctant to do so, he was directed by Haley to remove the plaintiff from his elected position. Counsel informed the plaintiff that, despite his misgivings about the legality of an impeachment, he had to proceed to start with removal proceedings against the plaintiff because "The Black Coalition and Haley want you out, and they pay me my fee." The court finds this testimony by the plaintiff credible, and the defendants have offered no evidence contesting the plaintiff's version of this telephone call. CT Page 10056
On June 16, 2001, as noted previously, the defendants met to discuss how to proceed to have the plaintiff removed as an elected Commissioner. It was at this meeting that defendant Haley appointed himself and defendant DeLoatch as an Ethics Commission and decided to recommend to themselves, as Commissioners, that they voted to begin impeachment proceedings against the plaintiff. It was at this meeting that they did vote to commence impeachment proceedings.
A hearing on impeachment was scheduled for June 28, 2001. The court finds that prior to the meeting on June 16, 2001, there was no existing ethics code for the Fire District Commissioners, and there existed no Ethics Commission. The only Code of Ethics which existed was in the minds of the defendants on June 16, 2001. The plaintiff could not have been aware of any code; nor could he have been aware of any potential violations of such a nonexistent code.
The defendant DeLoatch admitted under oath that prior to the June 28, 2001 "Impeachment" proceedings, that he and defendant Haley had dinner with Chief Henderson and Carol Brown of the West Haven Black Coalition at the Café Allegra. DeLoatch testified that no conversations regarding the plaintiff's pending impeachment proceedings took place. The court does not find this to be credible, as the defendant DeLoatch had denied any such type of meeting until confronted by the plaintiff's counsel who had knowledge of the exact place, date and time of this meeting and the identity of the parties who were present. This dinner meeting occurred on June 23, 2001, exactly seven days after the defendants voted to commence impeachment proceedings and five days before they would be required to act as an impartial factfinding commission hearing the impeachment evidence.
On June 28, 2001, as recited previously, the plaintiff was found guilty of several of the charges listed on the Impeachment Charge Sheet and was terminated as an elected Commissioner for the Allingtown District Board of Fire Commissioners. On July 3, 2001, the plaintiff, refusing to recognize the legitimacy or legality of his removal from elective office, attended the regular monthly meeting of the Commission. He was refused Commissioner status by defendant Haley, who then proceeded to declare the plaintiff's position vacant. The defendant Haley then appointed former Commissioner DeLoatch to fill the balance of the plaintiff's elective term.
 II.
The court first must rule on the quo warranto action filed by the plaintiff. The court finds that the office of Fire Commissioner is a public office, the plaintiff having duly been elected as a public official CT Page 10057 by the eligible voters of the Allingtown Fire District in June, 1999. His term is scheduled to expire on June 30, 2002. A new elective term would commence on July 1, 2002 for the plaintiff's present position. New HavenFirebird Society v. Board of Fire Commissioners, supra, 436.
The plaintiff has met the two criteria to determine whether a governmental position constitutes a public office within the meaning of the quo warranto statute. Legislation authorizing a fire commission and outlining its duties does exist. Secondly, as a fire commissioner, the plaintiff has certain duties which he is to exercise for the benefit of the public. State ex rel. Neal v. Brethauer, 83 Conn. 143, 146, 75 A. 705
(1919).
The defendant DeLoatch has not met his burden of proof to show that he has complete title to the office in dispute. Marsala v. Bridgeport,
supra, 328; State ex rel. Gaski v. Basile, 174 Conn. 36, 38, 381 A.2d 547
(1977). By virtue of an illegal impeachment proceeding and termination of the plaintiff, the defendant DeLoatch was appointed to a vacant position on the Board of Fire Commissioners. The defendant DeLoatch argues that he was appointed by the Chairman of the Commission, defendant Haley, and that Haley, as Chairman, had the power to do so. He also argues that at the time he was appointed on July 3, 2001, the position was vacant. However, the object of a quo warranto proceeding is to test the actual right to the office of Fire Commissioner and not merely the color of right. Marsala v. Bridgeport, supra, 328.
Article Ninth, § 1 of the constitution of Connecticut provides: "The house of representatives shall have the sole remedy of impeaching." Article Ninth, § 2 of the constitution of Connecticut provides, in relevant part: "All impeachments shall be tried by the senate. . . ." Article Ninth, § 3 of the constitution of Connecticut provides, in relevant part: "The governor and all other executive and judicial officers shall be liable to impeachment. . . ." The court in its rulings dated July 23, 2001 and July 24, 2001 that the defendants' motion to dismiss be denied, found that the General Assembly has the exclusive powers of impeachment, and that the impeachment is solely limited to those individuals listed in Article Ninth, § 3 of the constitution of Connecticut. The Allingtown Fire District Board of Fire Commissioners did not possess the power to impeach the plaintiff Samperi and to remove him from his duly elected position as a Fire Commissioner. Therefore, the vacancy created by said impeachment did not exist. The impeachment proceeding conducted by the defendants, acting in their official capacities as the Board of Fire Commissioners, is hereby declared null and void. That being so, the defendant Haley, in his position as Chairman of the Board of Fire Commissioners, had no legal authority to appoint defendant DeLoatch to a vacant position on said Fire Commissioner, caused CT Page 10058 by the plaintiff's impeachment and termination from his elected position.
The court further finds that the defendant DeLoatch has no right to said office and no legal authority to exercise the rights, powers or privileges of said office of Fire Commissioner.
The court hereby orders that, effective immediately, said Calvin DeLoatch is hereby removed from the office of Fire Commissioner for the Allingtown District Board of Fire Commissioners, and that said position formerly held by the plaintiff Samperi be declared vacant.
 III.
The plaintiff, pursuant to General Statute § 52-485, has filed a writ of mandamus seeking to be restored to his elected position as a Fire Commissioner. As previously noted, the court, by granting the plaintiff a judgment in his quo warranto proceeding, has not returned the plaintiff to his position as a Fire Commissioner. New Haven Firebird Society v.Board of Fire Commissioners, supra, 436. If the plaintiff can thereafter establish his clear right to that position, he may bring an action in mandamus to seek his appointment to that position. Beccia v. Waterbury,185 Conn. 445, 456-57, 441 A.2d 131 (1981) Mandamus is the proper remedy for reinstatement of a public official who, despite a clear legal right to remain in office, has been wrongfully ousted from his position.Hennessey v. Bridgeport, 213 Conn. 656, 569 A.2d 1122 (1990); State exrel. Comstock v. Hempstead, supra, 556; Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168-73 (1803).
The court, by the overwhelming evidence, finds that the plaintiff Samperi, by virtue of an illegal impeachment proceeding, has been wrongfully terminated from his position as a Fire Commissioner. The writ of mandamus is an extraordinary remedy and to be used only under exceptional circumstances. It is not to be used to enforce a doubtful or a contested right. The unprecedented use of an impeachment proceeding by the Allingtown District Board of Fire Commissioners and the defendants Haley and DeLoatch constitutes such exceptional circumstances, that the court is exercising its equitable discretion and hereby grants the plaintiff Samperi's writ of mandamus. The plaintiff has no other adequate remedy at law. He has demonstrated to the court that he has a clear legal right to his elected office and a right to exercise the powers, duties and privileges of said office.
The plaintiff was elected to a three year term by the voters of the Fire District. The defendants attempted to utilize a clearly illegal procedure in ousting him from his elected position. To deny him the right CT Page 10059 to complete his term would be to deny the rights, not only of the plaintiff, but of the voters of the district who elected him.
The court hereby orders that the plaintiff Samperi be immediately restored to his position as a Fire Commissioner of the Allingtown District Board of Fire Commissioners. The court further issues injunctive relief enjoining the defendants Haley, DeLoatch and the Allingtown District Board of Fire Commissioners from preventing or hindering the plaintiff's return to his public office, or from preventing him or hindering him from performing the rights, privileges, powers and duties of said office. Pursuant to[8] General Statutes § 52-475 through § 52-477, the court hereby orders that its judgment not be stayed pending any appeal that may be taken by the defendants. The court is of the opinion that great and irreparable injury will occur should the plaintiff be prevented from returning to his elected office by virtue of a stay of its judgment pending any appeal by the defendants. The plaintiff has been prevented from exercising his duties as a Fire Commissioner since June 28, 2001. His elective term is due to expire on June 30, 2002. The appellate process is time-consuming. A final decision on any appeal could realistically exhaust the time left in the balance of the plaintiff's term of office. A stay pending any appeal could, in effect, render this court's judgment moot in its realistic effect. Any stay pending appeal would frustrate the intent of this court and frustrate the electorate who voted for the plaintiff. To allow the defendants to achieve in defeat what they could not gain in victory would not be equitable and just.
In issuing this order regarding a denial of any stay of execution of its judgment, the court also relies on[9] Practice Book § 61-11(c) as the due administrator of justice requires that any automatic stay of appeal be terminated for the time period to file an appeal or any appeal subsequently filed within that time period.
 IV.
The court's final ruling is on plaintiff's requests for a reasonable attorney's fee and the costs incurred by the plaintiff. The court addresses this issue in light of its previous rulings on July 23, 2001 and July 24, 2001 that the defendants Haley and DeLoatch could be sued as individuals as well as in their official capacities as Fire Commissioners. The question to resolve after reviewing the evidence is (1) whether the defendants acted in excess of their legislative authority, and (2) were the defendants acting willfully, wantonly, recklessly or maliciously outside the scope of their official duties when they impeached the plaintiff. Shay v. Rossi, 253 Conn. 134, ___ A.2d ___, 2000. The court looks to see if the defendants' motives were CT Page 10060 improper and self-serving, and if they possessed the requisite existence of a state of consciousness with reference to the consequences of one's act. Id., 181.
The record before the court reveals that, despite the poor behavior of the defendants Haley and DeLoatch, and despite their illegal and misguided attempt to impeach the plaintiff, their conduct prior to the June 16, 2001 decision to impeach the plaintiff does not rise to the level of willful, wanton and malicious conduct.
Prior to and including the June 16, 2001 decision to impeach the plaintiff, the court finds that the defendants submitted to the pressure of community activists and not necessarily with any personal malice against the plaintiff. The defendant Haley sought out information and advice from various state agencies regarding the proper types of disciplinary actions that might be instituted by the Board of Fire Commissioners against the plaintiff. These actions by Haley mute the claim that the defendants acted recklessly.
Upon learning that they had few, if any, alternatives as to disciplinary proceedings against the plaintiff, the defendants turned to the advice of their legal counsel, who counseled and advised them in formulating a plan to seek the impeachment of the plaintiff. Acting with legal counsel's consent and assistance, they proceeded. This reliance on advice of counsel by the defendants, who were lay persons, sufficiently insulates them against any claim of personal liability as individuals for attorney's fees and costs of the plaintiff.
In so ruling, the court emphasizes that it does not condone the behavior of the defendants throughout the entire process from May, 2001 through today's date. They acted with a complete lack of good judgment and responsibility to their duties as Fire Commissioners as it relates to their dealings with the plaintiff. They showed a lack of impartiality and fairness toward the plaintiff in the manner in which they handled the proceedings from June 6, 2001 through the June 28, 2001 impeachment hearing. There is sufficient evidence to question their motives, but the evidence is insufficient to rise to the level of willful, wanton, reckless and malicious behavior by the defendants.
The court, in granting the plaintiff costs and a reasonable attorney's fee, orders that those costs and fees be assessed against the Allingtown District Board of Fire Commissioners. The court further rules that the judgments for the plaintiff in the quo warranto and mandamus actions be entered against the Allingtown Fire District, and the defendants Haley and DeLoatch in their official capacities as Fire District Commissioners and not in their individual capacities. CT Page 10061
The court reserves decision as to any amounts to be awarded to the plaintiff for costs and an attorney's fee and defers any decision on such amounts to a further evidentiary hearing.
The Court
By Arnold, J.
 Appendix A IMPEACHMENT CHARGE SHEET AGAINST JOHN SAMPERI IN HIS CAPACITY AS COMMISSIONER ON THE ALLINGTOWN BOARD OF FIRE COMMISSIONERS
The following charges all specifically relate to alleged statements made by John Samperi, while acting in his official capacity as a Commissioner of the Allingtown Board of Fire Commissioners:
1. Dereliction of duty as you directly disobeyed a standing order of the Board of Fire Commissioners of Allingtown District to uphold the integrity and professionalism of the position of Commissioner by using racial slurs and making derogatory comments in reference to "lesbians and gays" and racist comments on or about May 23rd, 2001.
2. Breach of duty as you failed to maintain and cultivate goodwill and cooperation of the public and fellow commissioners by displaying improper conduct and attention to duty; a lack of proper concern for the well-being of all persons in the district and a demonstrated a lack of respect and consideration for' all persons in your actions and words at the public hearing on June 6, 2001.
3. Breach of duty in that "you failed to maintain proper decorum at a public meeting on June 6, 2001.
4. Breach of duty and public faith and trust when you misrepresented the truth by stating that you had no opportunity to discuss the appointment of the one of the applicants for the position of Fire Chief when you in actuality had several meetings in the past at the public hearing on June 6, 2001.
5. Breach of Connecticut General Statutes obligation for privacy as a Commissioner and breach of privacy laws by disseminating to the public privileged and personal information from personal interviews CT Page 10076 of applicants for the position of Fire Chief and from interviews exposing the district to potential lawsuits and liability for slanderous statements made to the public at the public hearing on June 6, 2001.
6. Failure to meet the standard of behavior and moral and ethical obligation of a public official by being impolite and discourteous to several voters and other persons while performing official duties at the June 6, 2001 public hearing.
7. Breach of position of trust and general policy stemming from your public criticism and public comments that, on balance, impair discipline by any fellow Commissioner and or disrupt harmony among fellow Commissioners, or have a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impede the performance of a speaker's duties or interfere with the regular operations of the Commission at the public hearing on June 6, 2001.
8. Conduct unbecoming a Commissioner by using racial slurs and making negative references to lesbians and gays" and other racist comments and thereby undermining confidence in your ability to perform your position as a public leader and figure of authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
9. Violation of the public trust and faith in the Board of Fire Commissioners by using racial slurs and making negative references to "lesbians and gays" and other racist comments, and thereby undermining confidence in your ability to perform your position as a public leader and figure of authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
10. Unethical behavior not appropriate for a Commissioner by using racial slurs and making negative references to "lesbians and gays" and other racist comments, and thereby under-mining confidence in your ability to perform your position as a public leader and figure of authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
11. Immoral statements not appropriate for a Commissioner by using racial slurs and making negative references to "lesbians and gays" and other. racist comments and thereby undermining confidence in your ability to perform your position as a public leader and figure of CT Page 10077 authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
12. Breach of Fiduciary duty as a Commissioner in that you failed to obtain three bids for the repair and reconstruction of the firehouse floor on or about budget year 2000.
13. Breach of fiduciary duty as you signed a contract for benefits for the Chief and Deputy Chief for excessive benefits past their proper entitlement and without researching their current contractual agreements on or about April 4, 2000 exposing the district to unnecessary expenditure and liability.